**TEXAS COMMERCE BANK NATION-AL ASSOCIATION, Victoria Bankshares, Inc., and Norwest Bank Texas, N.A., Appellants,**

v.

**James Lawrence WOOD, Charles Kaffie, and James Barnette, Appellees.**

No. 13–98–393–CV.

Court of Appeals of Texas, Corpus Christi.

May 20, 1999.

Rehearing Overruled June 24, 1999.

Thomas Kirkendall, Kirkendall, Isgur & Foltz, Houston, Frederic Dorwart, Dorwart Lawyers, Tulsa, OK, James R. Harris, Andrew M. Greenwell, Harris & Greenwell, Corpus Christi, J. Michael Medina, Tulsa, OK, for appellees.

Abraham Moss, Corpus Christi, Louis L. Bagwell, John W. Porter, Baker & Botts, Houston, Marshall Boykin, III, Wood, Boykin & Wolter, Corpus Christi, for appellants.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice CHAVEZ.

We withdraw our opinion of February 11, 1999, and substitute this opinion in its place.

---

1. Section 51.014 of the Texas Civil Practice and Remedies Code authorizes interlocutory appeal from an order that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp.1999).

2. Separate appellants' briefs were filed by the Texas Commerce entities and the Norwest entities. Some of the issues they raise on appeal are shared and some are raised only

This is an interlocutory appeal[1] from the certification of a class action brought by persons with ties to certain trust accounts against Texas Commerce Bank and various other entities[2] involved in the transfer of those trusts to new fiduciaries. We affirm the certification order.

In 1993 Texas Commerce Bank purchased Ameritrust, a company which served as trustee for trust accounts. Ameritrust did business in four Texas cities where Texas Commerce did not wish to continue operations: Corpus Christi, Waco, Wichita Falls, and Sherman. On March 9, 1994 Texas Commerce organized four national banks, one in each of the four cities, and transferred the fiduciary responsibility for the trust accounts in each city to the newly formed bank in that city.[3] The next day Texas Commerce sent letters to the appellees informing them of the substitution of these newly formed trust companies as fiduciaries for their accounts and advising them of their right to file a petition "in the appropriate court" if they "disagree[d] with this change." Shortly thereafter the new banks in Corpus Christi, Waco, and Wichita Falls were sold to three Norwest Companies, and the bank in Sherman was sold to Alliance Trust Company. The change in fiduciary status became effective June 10, 1994.

On May 21, 1996 the plaintiffs filed a petition alleging that they should have been informed that Texas Commerce stood to profit from the 1994 transfer of the trust accounts, and that it had conflicts of interest in the transaction. The petition further argued that independent counsel

by one. For simplicity, we refer to all of these as "appellants" or "defendants" and consider all of the issues they raise together.

3. The four companies were called Texas Commerce Trust Company—Corpus Christi, N.A., Texas Commerce Trust Company—Waco, N.A., Texas Commerce Trust Company—Wichita Falls, N.A., and Texas Commerce Trust Company—Sherman, N.A..

should have been appointed to represent the interests of the trust beneficiaries, and that any proceeds from the sale of the trust accounts properly belonged to the trusts themselves, not to Texas Commerce as trustee. The petition asserted causes of action for fraud, conversion, breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligence, and deceptive trade practices. On July 7, 1998 the trial court certified the plaintiffs as a class in an action against all the named defendants except Alliance. Texas Commerce and the Norwest defendants appealed the certification of the suit against them, and the plaintiffs appealed the trial court's refusal to include Alliance among the defendants named in the certification order.[4]

The appellants contend that the trial court improperly certified the class against them because: (1) they complied fully with the Substitute Fiduciary Act;[5] (2) the plaintiffs' claims are pre-empted by ERISA;[6] (3) the plaintiffs have failed to demonstrate the typicality, representativeness, and commonality required by rules 42(a)(2) and 42(a)(3); and (4) none of the requirements of rule 42(b) have been satisfied. They also allege that the trial court erred in (5) failing to identify the issues that are common to the claims asserted by the members of the class, and (6) not permitting them to be heard before signing a written order that varied from the ruling the court had announced orally. Finally, they contend (7) the trial court acted arbitrarily and abused its discretion in certifying the class for the trusts in Corpus Christi, Waco, and Wichita Falls, while excluding the Sherman trusts from the class.

The plaintiff has the burden in the trial court of establishing the right to proceed as a class. *Clements v. LULAC*, 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ). Although the plaintiff carries the burden of proof, the plaintiff is not required to make an extensive evidentiary showing in support of its motion. *Id.* The right to proceed as a class may be established by "materials" which need not meet all the requirements of evidence that would be admissible at trial. *Rio Grande Valley Gas v. City of Pharr*, 962 S.W.2d 631, 640 (Tex.App.—Corpus Christi 1997, pet. dism'd w.o.j.). On appeal the reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *FirstCollect, Inc. v. Armstrong*, 976 S.W.2d 294, 299 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.); *Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 587 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.); *Vinson v. Texas Commerce Nat'l Bank*, 880 S.W.2d 820, 823 (Tex.App.— Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371–72 (Tex. App.—El Paso 1993, no writ). We reverse the order of the trial court only upon a showing that the trial court abused its discretion. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996). The trial court abuses its discretion only when it fails to properly apply the law to undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions not supported by material in the record. *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex.App.—Corpus Christi 1998, no pet.).

---

4. At the time set for oral argument Alliance had not yet prepared its appellees' brief. Rather than delay the appeal of Texas Commerce and Norwest against the plaintiffs, we announced from the bench our intention to sever that appeal from the appeal brought by the plaintiffs against Alliance. However, it now appears more efficient and fair to keep the two appeals together under cause number 13–98–393–CV. Therefore, we have not severed the appeals, and dispose of both in this opinion and judgment.

5. Tex. Fin Code Ann. § 274.101 *et seq.* (Vernon 1998).

6. 29 U.S.C. § 1001, *et seq.*

A member of a class may sue or be sued as a representative party of the class if the following requirements of rule 42(a) are satisfied:

1) the class is so numerous that joinder of all members is impractical;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and

4) the representative party will fairly and adequately protect the interests of the class.

TEX.R. CIV. P. 42(a). In addition, at least one requirement of rule 42(b) must be met before a class action may be maintained. *See* TEX.R. CIV. P. 42(b).

■ When certification is sought and decided at an early phase of the litigation, before supporting facts have been fully developed, trial courts should favor certification. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 607 (Tex.App.— Texarkana 1995, writ dism'd); *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 774–75 (Tex.App.—Fort Worth 1986, no writ). This is due in part to the fact that the certification order is always subject to later modification if circumstances require. *Microsoft*, 914 S.W.2d at 607. Under rule 42(c)(1), the trial court may alter, amend, or withdraw class certification at any time before final judgment, or order the naming of additional parties to insure adequate representation. TEX.R. CIV. P. 42(c)(1).

Rule 42 is patterned after the federal class action rule, and the federal decisions and authorities interpreting it are persuasive. *Amerada Hess Corp. v. Garza*, 973 S.W.2d 667, 674 (Tex.App.—Corpus Christi 1996, writ dism'd); *see* FED. R.CIV.P. 23.

7. Rule 42(b)(4) also requires a showing that "a class action is superior to other available

### ERISA and the Substitute Fiduciary Act

■ Appellants argue that the trial court should not have certified the class because the plaintiffs' claims are pre-empted by ERISA and because the transfers were conducted in accordance with the Substitute Fiduciary Act. These arguments are misplaced. In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class certification rule have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *accord Amerada Hess*, 973 S.W.2d at 679. Therefore, we find no merit in these issues relevant to our review of the class certification.

### Rule 42(a)(2) and 42(b)(4)

Appellants' first challenge under rule 42 is that the plaintiffs have failed to show questions of law or fact common to the class. However, the "commonality" requirement of rule 42(a)(2) is "subsumed under" the more stringent requirement of rule 42(b)(4) that common questions of law or fact predominate over questions involving individual members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, ——, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997) (construing analogous requirements under Federal Rule of Civil Procedure 23); *Rio Grande Valley Gas*, 962 S.W.2d at 642. Because appellants have raised issues on appeal concerning both rule 42(a)(2) and rule 42(b)(4), we will consider only appellants' challenge under the more stringent rule 42(b)(4).[7]

Appellants argue that several issues in this case will require evaluation on an individual basis and cannot be adequately addressed in a class action. These issues are: (1) whether the effect of establishing an independent counsel will vary with each

methods for the fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(b)(4).

individual in the class as the needs and interests of the individuals vary, (2) whether the notice provided by Texas Commerce was adequate, as some will require more information than others, (3) whether the transfer caused the individual beneficiaries a "material detriment" sufficient to satisfy the requirements of the Substitute Fiduciary Act, (4) whether the individual plaintiffs can show reliance on the defendants' alleged fraud, (5) whether limitations would apply differently for the different plaintiffs, (6) whether certain categories of trust beneficiaries have the power to change the designation of the fiduciary for their trust, and whether this power prevents them from having any justiciable claim in this case, and (7) whether the trust beneficiaries in the different cities received different degrees of notice, which would require distinguishing between their claims for lack of notice.

▪ The test the court uses in evaluating the predominance issue is whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Amerada Hess*, 973 S.W.2d at 678–79. Even in cases where it is not conclusively established that common issues predominate, the most efficient approach is for the trial court to certify the class, and if necessary after the case is developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Id.*

▪ We do not agree that the effect of establishing an independent counsel is a matter that must be determined on an individual basis. The position presented in appellees' pleadings is that the laws of trusts and fiduciary responsibilities demand that an independent counsel should be named to represent the beneficiaries of a trust whenever the trustees wish to transfer their office. Appellees' argue that this requirement should exist in all cases, regardless of the nature of the beneficiary.

We conclude that the claim asserted by the plaintiffs lends itself to a single determination common to the entire class and does not appear to require individual evaluation for each member of the class.

▪ Appellees' claim about the adequacy of the notices is also an issue that appears to be common to the entire class. Appellants' argument that individual members may have different needs for notice regarding the transaction does not apply to the allegations contained in appellees' pleadings. Appellees' pleadings argue that Texas Commerce had statutory and common law duties to inform the appellees of matters such as its financial interest in the transfers. The duty appellees allege has been violated is a duty that would apply equally to all members of the class. As with appellees' argument for appointment of an independent counsel, if this duty is recognized and found to have been breached, that determination will apply for all members of the class.

▪ We next consider appellants' arguments that the "material detriment" element under the Substitute Fiduciary Act [8] and the reliance element of a fraud cause of action would require individual examination. In class actions alleging fraud, courts frequently distinguish between cases where the alleged misrepresentations vary in each transaction from instances where the alleged misrepresentations were substantially the same to all the class members. When the alleged misrepresentations differ, the danger exists that a class action will disintegrate into numerous individual trials, and therefore class certification is inappropriate. *Rio Grande Valley Gas*, 962 S.W.2d at 643; *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 843 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Brister*, 722 S.W.2d at 774. However, in cases where the misrepresentations are the same and there is

---

8. Under the Substitute Fiduciary Act, a substitution may be denied if the substitution is materially detrimental to an account or its beneficiaries. TEX. FIN.CODE ANN. § 274.107(a)(1) (Vernon 1998).

a "well defined community of interest in the questions of law and fact involved," then the plaintiffs are usually permitted to proceed as a class. *Id.* In this case, the alleged misrepresentations were substantially the same for each of the plaintiffs, so class issues predominate for the plaintiffs' fraud claims. Because the "material detriment" issue under the Substitute Fiduciary Act is analogous to the "reliance" issue under a claim for fraud, the same rule should apply. We hold that common issues predominate over individual issues for both the fraud and Substitute Fiduciary Act issues.

■ With regard to appellants' argument concerning limitations, we fail to see how limitations can be a problem for any of the plaintiffs. The first class pleading in this case was filed May 21, 1996, less than two years after the fiduciary substitutions became effective. Because the claims in this case involve primarily the failure to perform various duties intended to notify and protect the trust beneficiaries, it is unlikely that the members of the class knew that Texas Commerce had breached these duties, and therefore the discovery rule would bar a limitations defense to their claims.

■ Next, we consider appellants' argument that certain categories of trust beneficiaries have the right to change the fiduciary designation, which may bar them from successfully asserting any causes of action. We fail to see how this power defeats the plaintiffs' allegations. The plaintiffs assert that Texas Commerce should have informed the beneficiaries that it stood to profit from the transfer of the trust accounts and that it had a conflict of interest, independent counsel should have been appointed to represent the interests of the trust beneficiaries, and any proceeds from the sale of the trust accounts properly belonged to the trusts themselves, not to Texas Commerce as trustee. None of these assertions are affected by the power trust beneficiaries may have to designate a different trustee. The plaintiffs have indi-

cated that they may try to develop a theory of damages that the trust beneficiaries have been subjected to higher trustee fees since the transfer occurred, and, if this theory is pursued, the defendants' argument that the beneficiaries have the power to replace the trustees will have to be considered. However, the extent to which these issues will occupy the trial court's attention remains to be seen.

Finally, we consider appellants' argument that the appellees in some of the cities received more notice than others. Appellants contend that those in Corpus Christi received an additional letter, which named the Victoria Bank & Trust, purchaser of the fiduciary office for their trusts. However, this letter indicates only that "we will soon be affiliated with Victoria Bank & Trust." It does not explain that a sale has occurred. The rest of the letter praises Victoria Bank & Trust and assures clients "your account will not be affected in any way by this transfer." Donald Kingsbury, the bank officer who signed the letter, testified in a deposition that the letter was "basically just a PR letter." We do not agree that the mere mention of the name Victoria Bank & Trust, with the explanation that it is coming into an "affiliation," notified the appellees that the fiduciary office for their account was being sold, or provided any meaningful notice beyond that contained in the March 10, 1994 letter sent by Texas Commerce to all of the trust clients.

■ Appellants also contend that some of the appellees were told of the sale in personal conversations with trust officers. The record contains affidavits from some of the trust officers who managed the plaintiffs' trusts, wherein they state that they were "instructed to inform customers being served that the trust offices would be acquired" by another bank, and that they "discussed the proposed acquisition with the customers ... when they had occasion to do so." There is also deposition testimony from various trust officers

wherein they recall having conversations with some of the appellees around the time of the transfers, although the trust officers remembered only having "general" conversations and were largely unsure whether particular topics were discussed with particular individuals. We agree that there could be a need to distinguish between the notice received by appellees who received only written letters and those who may have received more notice from personal conversations. However, at this time the record in this regard is largely undeveloped. For example, there has been no testimony thus far from any of the appellees regarding what notice they received in personal conversations. Mindful that certification is to be favored during early stages of litigation, before supporting facts have been developed, we hold that the trial court acted within its discretion in finding that common issues predominate, despite the problems the personal conversations may present to common adjudication of the notice issues. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *Brister*, 722 S.W.2d at 774–75.

■ In many other respects, common issues do predominate over individual issues, and there was ample grounds for the trial court to determine that a class action is superior to other methods of adjudicating this controversy. This case concerns essentially identical transactions for the transfer of the fiduciary office over the plaintiffs' trust accounts. Identical notice letters were sent to all of the plaintiffs. In all instances, the defendants received financial compensation as part of the transfer transaction. Many of the legal issues to be determined, such as whether the Substitute Fiduciary Act applies, whether the defendants complied with that Act, whether the defendants bore common law duties independent of that Act, whether those common law duties were breached, and whether the plaintiffs are entitled to "disgorgement" of any proceeds received by the defendants from the transfers, appear to be subject to class-wide determination. We conclude that issues common to the class do predominate. If, during the development of the case, it appears that common issues no longer predominate, the trial court has the discretion to modify the class certification or decertify altogether. Tex.R. Civ. P. 42(c)(1); *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *Brister*, 722 S.W.2d at 774–75. We conclude that, despite the few issues that may require individual evaluation, the trial court was within its discretion in holding that issues common to the class predominate.

■ Despite the existence of common issues and the opportunity to adjudicate several hundred claims at one time, appellants contend that a class action is not a superior method to adjudicate this controversy because some of the trusts involved will contain forfeiture clauses, with the effect that beneficiaries who participate in this class action may forfeit their rights under the trusts.

■ First, we note that there is nothing in the record establishing that any of the trusts at issue contain forfeiture clauses, or what the wording of such clauses might be. The trial court may not rule on a motion to certify a class based on factual assertions not supported by material in the record. *Methodist Hosps. v. Tall*, 972 S.W.2d at 898. Second, we question whether a forfeiture clause that prohibited a trust beneficiary from suing the trustee for fraud and intentional self-dealing would be valid. The right to challenge a fiduciary's actions is inherent in the fiduciary/beneficiary relationship. *McLendon v. McLendon*, 862 S.W.2d 662, 679 (Tex. App.—Dallas 1993, writ denied) (trial court erred in failing to grant declaratory judgment that *in terrorem* clause did not apply to beneficiary's action against executors of estate for fraud and breach of fiduciary duty).

Appellants also argue that the settlors of some of the trusts in the class will have preferred that remaindermen not be informed of their interests until those interests vest. Notice to all potential members of the class, appellants argue, will violate the confidentiality of many trust documents. Appellants cite *Schaffner v. Chemical Bank*, 339 F.Supp. 329, 335 (S.D.N.Y.1972), which included these kinds of concerns among the many reasons for determining that a class action was not the best available method for adjudicating the controversy in that case.

This argument is also not supported by material in the record to indicate that confidentiality is a concern with any of the trusts involved in this case. The record does not reflect any language from any trust settlement document that provides for any confidentiality regarding the identity of beneficiaries. Under the facts of this case and the allegations asserted by the appellees, we are not convinced that the confidentiality concerns raised by the appellants justify holding that the trial court abused its discretion in certifying the class. Appellees' allegations concerning the inadequacy of notice would not apply to anyone with an interest in a trust who, according to the terms of the trust, is prohibited from being informed of that interest. Rule 42(b)(4) does not require that a class action be shown to be a perfect method of adjudicating the controversy, rather only that a class action is superior to other methods. Adjudicating the identical claims of these hundreds of trusts in a single adjudication presents an opportunity for enormous gains in efficiency. Furthermore, a class action provides what may be the only possible means of redress for some members of the class. *Amerada Hess*, 973 S.W.2d at 680; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985) (because plaintiffs' claims were small, most of the plaintiffs would have no realistic day in court if a class action were not available). We hold that the trial court did not abuse its discretion in determining that a class action was superior to other methods of adjudicating this controversy and rule 42(b)(4) had been satisfied.[9]

### Rule 42(a)(3)

The appellants argue that the class representatives do not satisfy the "typicality" requirement of rule 42(a)(3) because all three of the class representatives had trust accounts in Corpus Christi, and, therefore, have no claims against the defendants involved in the trust accounts in Waco, Wichita Falls, and Sherman.

The typicality requirement is satisfied when the evidence shows that the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole. *FirstCollect*, 976 S.W.2d at 301; *Chevron U.S.A., Inc. v. Kennedy*, 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism. w.o.j.). A plaintiff cannot represent those having causes of action against whom the plaintiff has no cause of action and from whose hands he has suffered no injury. *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ), (citing *La Mar v. H & B Novelty Loan Co.*, 489 F.2d 461, 462 (9th Cir.1973). The *La Mar* rule applies even if the plaintiffs' injuries are identical to those of the parties they are representing. *Cedar Crest*, 889 S.W.2d at 331.

Partnership, joint enterprise, control, conspiracy, and aiding and abetting all may serve as exceptions to the *La Mar* rule, since they denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the

9. The trial court found that certification was proper under each subpart of rule 42(b), and appellants have challenged the trial court's finding with respect to each subpart. However, because we have found that certification was proper under rule 42(b)(4), we need not consider appellants' arguments regarding the other subparts.

plaintiff may have dealt primarily with a single member. *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 375 (D.C.N.Y.1984). Many courts divide the exceptions into two types of situations: (1) where all the injuries are the result of a conspiracy or concerted scheme on the part of the defendants, and (2) where all the defendants are juridically related. The "juridically related" exception is generally applied only when a common rule is implemented by a class of government entities. *Cedar Crest,* 889 S.W.2d at 332; *see Texas Educ. Agency v. Leeper,* 843 S.W.2d 41, 55 (Tex.App.—Fort Worth 1991), *aff'd in part and reversed in part on other grounds,* 893 S.W.2d 432 (Tex.1994) ("juridically related" exception applied in suit by "home school" parents against Texas Education Agency and various local school districts). However, it has also been applied in cases brought against commonly owned financial institutions. *Barker v. F.S.C. Sec. Corp.,* 133 F.R.D. 548, 553 (W.D.Ark.1989).[10]

In this case, the four Texas Commerce Trust Companies were all subsidiaries of Texas Commerce Bank. Also, the three Norwest Companies that purchased the fiduciary office for the trust accounts in Corpus Christi, Waco, and Wichita Falls were all part of the Norwest corporate family. Therefore, although the representatives dealt only with Texas Commerce Trust Company—Corpus Christi and Norwest Bank Texas, South Central (the eventual purchaser for the Corpus Christi trusts), a sufficient juridical relationship among all the defendants is provided by the common ownership of these companies and the other Texas Commerce and Norwest Companies.

■ We conclude that the "juridically related" exception to the *La Mar* rule applies in this case, and the trial court did not abuse its discretion in determining that the plaintiffs have satisfied the "typicality" requirement of rule 42(a)(3).[11]

### Other Alleged Errors of the Trial Court

Appellants contend that the trial court failed to act in accordance with guiding principles by failing to identify the issues common to the class and by not permitting them to appear and offer objections to the court during a hearing on April 10, 1998. Appellants present no authority indicating that the trial court is required to identify the issues common to the class. There is, however, authority to the contrary. In *Vinson v. Texas Commerce Bank–Houston, N.A.,* 880 S.W.2d 820 (Tex.App.—Dallas 1994, no writ), the appellant complained that the trial court had failed to provide the basis for its denial of class certification by failing to provide findings of fact and conclusions of law. The court of appeals held that Texas law does not require a trial court to make such findings and conclusions when ruling on a motion for class certification, and that it is not error for the trial court to fail to do so. *Id.* at 827–28.

10. Appellants contend that the "Texas rule" is to limit the juridical link exception to the *La Mar* rule to cases brought against governmental units. We do not agree that any such "Texas rule" exists. The language used in *Cedar Crest* is that a juridical relationship is "*most often* found where all defendants are officials of a single state...." Obviously, just because something is found "most often" in a particular context does not mean that it may never be found in another context.

11. Appellants also contend that the trial court erred by failing to dismiss Alliance from the case when it excluded Alliance from the list of defendants in the class action. Appellants argue that the trial court's failure to dismiss Alliance "apparently leaves Alliance in the case as an individual defendant." The order before us on interlocutory appeal is the trial court's order on the plaintiff's motion to certify a class. We are not convinced that the trial court was obligated, *sua sponte,* to enter an order dismissing Alliance from the case at the time it excluded it from the class, or that this alleged oversight may be challenged as part of the appellants' interlocutory appeal of the certification order. Appellants cite no authority to show us otherwise. Therefore, we do not pass on the trial court's failure to enter an order dismissing Alliance from the case.

Appellants' complaint that the trial court did not permit them to be heard on alleged variations between the court's oral ruling and its written order on the motion to certify is without merit. The trial court held a hearing on the motion to certify where appellants were afforded an opportunity to present their opposition to class certification. Appellants cite no authority requiring the court to hold another hearing if it desired to sign a written order that differed from the oral statements of the court during that hearing. Appellants did not file a motion for reconsideration after the court signed its written certification order to complain of the alleged variance between trial court's oral pronouncements and its written judgment. We conclude that the trial court did not deny appellants any right to be heard on their opposition to the certification order.

Appellants also argue that class representatives Charles Kaffie and James Barnette have no standing to sue. Appellants argue that, under the appellees' pleadings, Kaffie and Barnette seek to proceed as class representatives only. Because Kaffie and Barnette do not have individual claims against the appellants, they may not represent a class of those who do.

However, appellees' pleading specifies that Kaffie and Barnette come before the court "individually and as representatives of a class." The pleadings also specify the trusts Kaffie and Barnette are involved with, and the appellants' involvement in the management and transfer of the fiduciary office for those trusts. Because appellees' pleadings indicate that Kaffie and Barnette do have individual claims in common with the class claims asserted against the appellants, we find no error in the trial court's determination that Kaffie and Barnette have standing.

Finally, appellants contend that the trial court's abuse of discretion is demonstrated by its inexplicable action in certifying the class for the trusts in Waco and Wichita Falls, but refusing to certify the class for the Sherman trusts. Our opinion thus far has explained why we hold that the trial court did not abuse its discretion in certifying the class for the trusts in Waco and Wichita Falls. As we explain in the next section of this opinion, we also hold that the trial court did not abuse its discretion in refusing to certify the class for the Sherman trusts. Because we hold that the trial court's action in certifying the class was not "inexplicable," but rather within its discretion, we find no merit in the argument presented under this issue.

## Cross–Point Regarding the Exclusion of Alliance

■ The trial court refused to include Alliance Trust Company, the eventual purchaser of the Sherman trusts, among the defendants in the class action. Because the class representatives had interests only in the Corpus Christi trusts which passed from Texas Commerce Bank to Texas Commerce Trust Company—Corpus Christi and then to Norwest, the class representatives do not share the putative class members' claims against Alliance. As we discussed in our treatment of the "typicality" issue under rule 42(a)(3), the class representatives cannot represent those having causes of action against whom they have no cause of action and from whose hands they have suffered no injury. *Cedar Crest*, 889 S.W.2d at 331, *(citing La Mar*, 489 F.2d at 462). Unlike the claims pertaining to the trusts in the other cities, none of the exceptions to the *La Mar* rule apply to the Sherman trusts. Alliance has no common ownership or other relationship with the other defendants sufficient to establish a juridical link and justify including them in the class.

■ The plaintiffs insist that, as trustee of the Sherman trusts, Alliance is a necessary party to any claim involving those trusts. We disagree. The plaintiffs rely on Texas Rule of Civil Procedure 39(a), which provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of pro-

cess shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

TEX.R. CIV. P. 39(a).

The general rule is that "[t]he trustee is always a proper, and usually a necessary, party in an action concerning a trust." 72 TEX. JUR.3D *Trusts* § 197 (1990). However, under the terms of rule 39(a) and the circumstances of this case, Alliance is not a necessary party here. Excluding Alliance does not prevent the class members from obtaining complete relief, nor does it prevent Alliance from protecting its interests in the trusts or subject any party to a substantial risk of multiple or inconsistent obligations. While excluding Alliance from this class action may prevent the plaintiffs from obtaining the relief they seek from Alliance in this action, those claims for relief still may be asserted in separate litigation.

There is no danger that the class action will have preclusive effects on other litigation involving Alliance. A party seeking to argue that litigation of an issue has been precluded by prior litigation must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; (3) the parties were cast as adversaries in the first action, and (4) the party against whom the doctrine is asserted must have been a party or in privity with a party in the first suit. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801–02 (Tex.1994). There is no prevailing definition of privity which can be automatically applied to cases involving issue preclusion. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971). Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interests that the party to the judgment represented the same legal right. *Id.* Those in privity with a party may include persons who exert control over the action, persons whose interests are represented by the party, or successors in interest to that party. *Getty Oil*, 845 S.W.2d at 800–01. However, the party against whom collateral estoppel is asserted must always have had a full and fair opportunity to litigate the issue in the prior suit. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

In this case, if Alliance is excluded from the class action, then the only argument for asserting issue preclusion against them would be that they were in privity with Texas Commerce because they are the successor in interest to the fiduciary office of the trusts. However, if excluded from the class, Alliance would not have a "full and fair opportunity" to litigate its position. We note also that the doctrine of issue preclusion is designed to promote judicial efficiency. *Sysco*, 890 S.W.2d at 801. Excluding Alliance from this class action enhances judicial efficiency by permitting the class action against the other defendants to proceed without the *La Mar* "typicality" problem that exists if Alliance is included. Finally, we note also that, even if collateral estoppel applied, trial courts in this state have discretion to refuse to apply it in the interest of fairness. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986). This is certainly a situation where such discretion would be well-

exercised to resist preclusion of any issues between Alliance and the Sherman plaintiffs.

Because we find no error in the trial court's exclusion of Alliance from the class, we also reject the appellants' argument that the trial court acted arbitrarily in excluding only Alliance, when the claims pertaining to the trusts in Waco and Wichita Falls were equally remote.

Having found no reversible error in any of the issues raised by the appellants or in the appellees' cross-point, we affirm the order of the trial court.