**TCI CABLEVISION OF DALLAS, INC., TCI Cablevision of Houston, Inc., TCI Cablevision of Texas, Inc., and Tele-Communications, Inc., Appellants,**

v.

**Bart OWENS, Appellee.**

No. 09–99–242 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 22, 1999.

Decided Jan. 27, 2000.

J. Hoke Peacock, Orgain, Bell & Tucker, LLP, Beaumont, Michael L. Davitt, Michael L. Rice, James M. Jones, Jones, Day, Reavis & Pogue, Dallas, for appellant.

Ethan L. Shaw, Moore, Landrey, LLP, Beaumont, Jerry J. McKernan, McKernan,

Cleff & Walker, Baton Rouge, LA, Patrick W. Pendley, Plaquemine, LA, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

This is an interlocutory appeal from an order certifying a class action under Rule 42 of the Texas Rules of Civil Procedure. Appellants are TCI Cablevision of Dallas, Inc., TCI Cablevision of Houston, Inc., TCI Cablevision of Texas, Inc., and Tele-Communications, Inc. Appellee Bart Owens ("Owens"), who received cable service only from TCI Cablevision of Texas, Inc. ("TCI–Texas"), asserted a claim regarding the late fee charges assessed by appellants on cable subscribers' bills. Owens contended that the late fees neither bore any reasonable relationship to actual losses suffered by appellants because of customers' late payments nor represented a reasonable advance estimate of those losses.

On May 14, 1999, the trial court's amended order named Owens class representative and certified the following class:

> Those persons assessed late fees or administrative fee charges by any TCI entity or their affiliates in the State of Texas for failure to pay their cable bills within the time frame specified by the TCI entity or affiliates at any time during the period beginning in May 1986 and ending on the date notice of this class action is published (the "class" period).

> Excluded from the class are the Defendant, any parent, subsidiary, affiliate or any other person controlled by the Defendants, the officers, directors, agents, servants, or employees of any of the same; and the members of the immediate families of any such person. Likewise, excluded from the class are any members of the judicial branch of the State of Texas and members of the immediate families of any such person.

Appellants present one issue on appeal: Did the district court err in certifying a statewide class of cable television late fee payers to pursue claims for the recoupment of late fees voluntarily paid and for ancillary injunctive relief where the claims of the sole class representative are barred as a matter of law and certification is otherwise improper?

We find the district court did not err.

The Texas Supreme Court recognizes the benefits of class action suits:

> Class action suits furnish an efficient means for numerous claimants with a common complaint to obtain a remedy "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980).... Class actions also facilitate "the spreading of litigation costs among numerous litigants with similar claims." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 403, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980).

*General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 952–53 (Tex.1996); *Hi–Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 385 (Tex.App.—Beaumont 1999, *mandamus filed*, Mar. 22, 1999).

■ To obtain certification of a class action, a party must meet all the requirements of Tex.R. Civ. P. 42(a) and also satisfy one of the subsections of Tex.R. Civ. P. 42(b). "Under Rule 42(a), appellants must show: (1) numerosity—the number of plaintiffs is so numerous that joinder of all class members is impracticable; (2) commonality—there are questions of law or fact common to the class; (3) typicality—the claims of the proposed representatives are typical of those of the class; and (4) adequacy—the proposed representatives will fairly and adequately

protect the interest of the class." *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.), *mandamus denied,* 951 S.W.2d 394 (Tex.1997); TEX.R. CIV. P. 42(a).

■ Here, the trial court found that the requirements of Rule 42(a) were met and certified the class under Rule 42(b)(1)(A), and 42(b)(4). The court further certified the class under 42(b)(2) to the extent that appellants are assessing late fees for a subscriber's failure to pay cable bills within the time frame specified by appellants. Under Rule 42(b)(1)(A), a class action may be maintained if the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class. Rule 42(b)(2) allows class certification if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Rule 42(b)(4) requires a finding both that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In applying Rule 42(b)(4), the trial court considers: (a) the interest of members of the class in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

## Standard of Review

■ We review the trial court's decision to certify a class for abuse of discretion. *Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.). "There is an abuse of discretion if the record clearly shows that (1) the trial court misapplied the law to the established facts, (2) the material in the record does not reasonably support the findings, or (3) the trial court acted arbitrarily or unreasonably." *Id.* (citing *Weatherly,* 905 S.W.2d at 648). A trial court has broad discretion in determining whether a lawsuit should be maintained as a class action. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). "In reviewing the trial court's ruling on certification, the appellate court is required to view the evidence in a light most favorable to the trial court's action, and indulge every presumption in favor of the trial court's action." *Weatherly,* 905 S.W.2d at 647. A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). "That the trial court, in the opinion of the appellate court, made an error in judgment, does not alone demonstrate an abuse of discretion." *Weatherly,* 905 S.W.2d at 647. If the court considers class certification early in a proceeding, before supporting facts are fully developed, it should favor maintaining the class action. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd). The court may always subsequently modify or decertify the class later. *Id.*

Appellants make four arguments in support of their issue.

## Owens Received Service From Only One Appellant

■ Appellants first argue that Owens cannot represent others in a suit against cable companies from which he has received no service and with which he has no contractual relationship. Owens stated

that he: (1) received cable service only from TCI–Texas; (2) had no contractual relationship with any other cable provider; and (3) had no knowledge of any other provider's billing practices.

 Generally, "a plaintiff cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ). "This rule applies even if the plaintiffs' injuries are identical to those of the parties they are representing." *Id.* However, "[t]here are two exceptions to this rule: (1) situations in which all injuries are the result of a conspiracy or concerted scheme among the defendants; and (2) instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.*

 In his brief on appeal, Owens has not alleged that the "conspiracy or concerted scheme" exception applies, but rather argues the appellants are "juridically linked." "A 'juridical link' is a legal relationship among the defendants that permits a single resolution of the dispute which is preferable to a multiplicity of similar actions." *Id.* at 332. "A juridical relationship is most often found where all defendants are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, rule or practice of state-wide application that is alleged to be unconstitutional." *Id.* The *Lashley* court determined there was no juridical link among a number of funeral homes that had arranged for dead bodies to be embalmed as part of a college's instructional program without the knowledge or consent of the decedents' families. *Id.* at 332.

However, the Corpus Christi court of appeals recently applied the "juridically related" exception to a case involving commonly-owned financial institutions. *Texas Commerce Bank Nat'l Ass'n v. Wood*, 994 S.W.2d 796, 807 (Tex.App.—Corpus Christi 1999, pet. dism'd). The *Wood* court noted that the four Texas Commerce trust company defendants were all subsidiaries of Texas Commerce Bank. Also, the three Norwest company defendants had purchased from Texas Commerce Bank the fiduciary office for the trust accounts in Corpus Christi, Waco, and Wichita Falls, and were all part of the Norwest corporate family. "Therefore, although the [class] representatives dealt only with Texas Commerce Trust Company—Corpus Christi and Norwest Bank Texas, South Central (the eventual purchaser for the Corpus Christi trusts), a sufficient juridical relationship among all the defendants is provided by the *common ownership* of these companies and the other Texas Commerce and Norwest Companies." *Id.* (emphasis added). The *Wood* appellants had contended the "Texas rule" limited the juridical link exception to cases brought against governmental units. Disagreeing with that proposition, the *Wood* court stated, "The language used in [*Lashley*] is that a juridical relationship is 'most often found where all defendants are officials of a single state....' Obviously, just because something is found 'most often' in a particular context does not mean that it may never be found in another context." *Wood*, 994 S.W.2d at 807 n. 10.

Here, we have a situation similar to *Wood* because Owens has established common ownership of the appellants. Owens received service from TCI–Texas. TCI–Texas is owned by Tele–Communications, Inc., which is the parent company not only of TCI–Texas, but also of other cable systems and cable companies around the country. The parent company, Tele–Communications, Inc. has three organizational regions in Texas: (1) the Dallas metro region; (2) the Houston region; and (3) TCI–Texas, which encompasses all the other TCI affiliates in the state, including Beaumont–Port Arthur. Appellants do not contest that all TCI entities and affiliates in Texas are part of the corporate

family of Tele–Communications, Inc. Under the "common ownership" theory, Owens has established a "juridical link." Therefore, the trial court did not abuse its discretion in certifying a statewide class.

### Voluntary Payment

As their second argument, appellants contend the voluntary payment doctrine bars Owens from recovering on the recoupment claim he alleges. Further, they assert his claim is atypical and he is an inadequate class representative. Under TEX.R. CIV. P. 42, a representative party must have a valid claim in order to present such a claim on behalf of others. *Corkery v. Texas Christian Univ.*, 955 S.W.2d 424, 429 (Tex.App.—Fort Worth 1997, pet. denied). Appellants cite *Weatherly*, 905 S.W.2d at 653, for the proposition that "the presence of even an arguable defense peculiar to the named plaintiff" may preclude a finding of typicality and adequacy of representation. While the quote is accurate, the *Weatherly* court (citing *Adams v. Reagan*, 791 S.W.2d 284, 290 (Tex.App.—Fort Worth 1990, no writ)) stated the proposition, then promptly qualified it, noting that factual differences did not defeat class certification in other actions where the claims arose from the same legal theory. *Weatherly*, 905 S.W.2d at 653.

Texas courts, of course, recognize the voluntary payment rule expressed in *Tyler v. Tyler*, 742 S.W.2d 740 (Tex.App.—Houston [14th Dist.] 1987, writ denied): "[M]oney voluntarily paid with *full knowledge of all the facts* and without fraud, deception, duress or coercion cannot be received back although it was paid upon a void or illegal demand or upon a claim which had no foundation in fact and was paid without consideration." *Id.* at 743 (emphasis added). The question, however, is whether the voluntary payment doctrine applies here to preclude class certification.

Owens asserts it does not because he did not have full knowledge of all the facts. He stresses that the material facts related to his claim for "unlawful liquidated damages" are not whether appellants charged late fees or whether he knew that late fees were being charged, but rather are whether the late fees were reasonably related to the costs of late payment and constituted a reasonable advance estimate of those costs.

Appellants argue that Owens, who had been receiving cable service for a number of years, paid late fees voluntarily. They contend that work orders, customer notices, and bills informed Owens he would be charged fees for late payments. At his July 1998 deposition, Owens testified he had not become aware that a fee for late payment was being charged until approximately a year and a half earlier. He had understood a reconnection fee could be charged if cable service had been disconnected for late payment. Upon reading bills during his deposition, Owens admitted the bills contained statements regarding the charging of administrative or late fees; however, he did not remember previously reading that language. He stated, "It's like reading a phone bill. It's very complicated sometimes." Owens further testified that when he became aware of the late fee, he believed it to be excessive, and he thought any fee charged to a paying customer was improper. After he became aware of the fees, he incurred additional late fees and paid them. He testified that he never talked to anyone at TCI regarding the late fee, never requested a waiver, and never refused to pay any charge that TCI placed on his bill.

Neither Owens nor appellants have cited any Texas cases applying the voluntary payment doctrine to late fees charged by cable television companies, and we have found none. However, appellants do refer us to an Oklahoma appellate decision applying the voluntary payment rule in a cable television late fee case and an Illinois appellate decision involving billing for a cable television concert that did not last as long as advertised. *See McWethy v. Telecommunications, Inc.*, 988 P.2d 356 (Okla.

Civ.App. Div. 1, 1999); *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325 (1995). The *McWethy* court, in applying the voluntary payment doctrine, noted that plaintiff pleaded "full knowledge of all facts" in his petition where he admitted: (1) defendants sent him monthly billing statements that specified a due date for payment of cable television services; (2) he knew a late fee would be assessed if payments were not made by the due date; and (3) he paid the late charge during the course of his service contract with defendants. *McWethy*, 988 P.2d at 356. In *Smith*, plaintiffs brought a class action suit seeking to recover payment for a pay-for-view program that did not run as long as advertised. *Smith*, 213 Ill.Dec. 304, 658 N.E.2d at 1328. Agreeing that plaintiffs' payments were voluntary, the appellate court upheld the trial court's dismissal of the action. *Id.* at 1334. In *Smith*, the plaintiffs paid the charge after viewing the concert, and thus were aware at the time of payment that they had not received the full three hour concert that was advertised. *Id.* at 1328. Here, Owens alleges that he did not pay the late fees with full knowledge of material facts because he did not know whether the late fees were reasonably related to the costs of late payment and constituted a reasonable advance estimate of those costs.

Taking a different approach is *Hill v. Galaxy Telecom, L.P.*, 184 F.R.D. 82 (N.D.Miss.1999). There, the court considered the voluntary payment doctrine and determined the central question to be resolved by the litigation was whether the fees charged by Galaxy for late payment were legitimate, reasonable fees for processing late payments, or whether they were arbitrary fees, serving as illegal penalties. *Id.* at 87. The *Hill* court held:

> In order for the voluntary payment defense to come into play, the "late fee charges" must first be determined as unenforceable. That issue is common to all proposed class members, and it is an issue of the class representative that is typical of the proposed class. If the "late fee charges" are held unenforceable, only then would it be considered whether there was compulsion, fraud, or mistake of fact. . . . Whether there was "compulsion" or "mistake of fact" are issues that may be subjective and require an individual inquiry of each class member to determine whether he or she acted under compulsion or was mistaken as to the enforceability and legality of these payments. Still, Rule 23(a)'s commonality and typicality requirements are met in this matter as to so many class issues that this court will not allow this one obscure issue that may not even arise to prohibit class certification. However, if the court finds at any time that issues of "compulsion," "mistake of fact," or any other similarly narrow issue eliminates the elements of commonality and/or typicality, the court may at that time exercise its discretionary power to decertify the class. Fed.R.Civ.P. 23(d).

*Id.* at 87.

Both appellants and appellees refer us to numerous unpublished trial court decisions from other jurisdictions that similarly are divided in applying the voluntary payment rule to claims regarding payment of late fees for cable television service. Considering the split of authority and Owens's statement that he did not have full knowledge of the material facts, it is far from clear that the voluntary payment doctrine applies here. Appellants' second argument does not convince us that the trial court abused its discretion in certifying the class.

### Commonality

■ Third, appellants argue that Owens's recoupment claim requires resolving individualized issues that predominate over common questions of law and fact. They assert that Owens's claim cannot be resolved on a class-wide basis because the voluntariness of any individual subscriber's

payment practices raises multiple subscriber-specific issues.

 However, the commonality requirement does not mean all questions of law and fact must be identical. *Beresky,* 986 S.W.2d at 387; *Dresser,* 847 S.W.2d at 372. "The threshold is not high, being met when at least one issue's resolution would affect the claims of all or a significant number of class members." *Beresky,* 986 S.W.2d at 387; *Ford Motor Co. v. Sheldon,* 965 S.W.2d 65, 69 (Tex.App.—Austin 1998, pet. granted). "Class certification will not be prevented merely because damages must be determined separately for each class member. Likewise, defensive issues peculiar to different members do not destroy the entire class." *Beresky,* 986 S.W.2d at 387 (citation omitted); *see Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ).

 Owens alleges appellants charged unlawful fees throughout the state. Appellants' conduct of charging the late fees relates to all potential class members. *See generally Chevron U.S.A., Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). Importantly, the claims within the suit "need not be identical or perfectly coextensive, but only substantially similar." *Lashley,* 889 S.W.2d at 331. "The test in evaluating the predominance issue is not whether the common issues outnumber the individual issues, but whether the court and the litigants will concentrate most of their efforts on the common or individual issues." *Manning,* 914 S.W.2d at 611. The issue of whether appellants here charged improper late fees is a single unifying issue common to the entire class. Other common issues may be contracts, services, and procedures. Should the trial court later determine that individual issues predominate, it may alter, amend, or withdraw the certification under Tex.R. Civ. P. 42. *Dresser,* 847 S.W.2d at 376.

Appellants also argue that a class action is not a superior method of resolving the class members' claims, because individual inquiries regarding payment practices predominate, thereby presenting management problems. The individual issues identified by appellants, however, may be resolved upon the filing of individual proofs of claim. *See Sun Coast Resources, Inc.,* 967 S.W.2d at 533–34. The class action also would avoid the repeated litigation of common issues in the individual actions, which " 'would be grossly inefficient, costly and a waste of judicial resources.' " *See Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 845 (Tex.App.—Houston [14th Dist.] 1996, no writ) (quoting *Adams,* 791 S.W.2d at 292). Further, "[c]lass actions can afford individuals the chance to seek recovery of damages for which an individual suit might otherwise be economically unfeasible; for that reason, the class action is superior because it permits claimants to obtain a resolution on the merits by means of an adversarial hearing despite the imbalance in the parties' economic positions." *Sheldon,* 965 S.W.2d at 73. Here, as in *Sheldon,* appellants would gain the advantage of facing and possibly defeating all claimants in one action, while appellees would face the disadvantage of having only one opportunity for successful resolution. *Id.*

Appellants' third argument does not persuade us that the trial court abused its discretion in certifying the class.

### Injunctive Relief

 Fourth, appellants argue that Owens's request for injunctive relief is inappropriate for class treatment because Owens primarily seeks a monetary recovery and he lacks standing to assert claims for injunctive relief individually or on behalf of a class.

### *Monetary Recovery*

To support their contention that seeking primarily monetary relief precludes Rule 42(b)(2) certification, appellants rely on: (1) *Allison v. Citgo Petroleum Corp.,* 151

F.3d 402, 415 (5th Cir.1998); (2) *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117 (D.Kan.1995); and (3) *Wiggins*, 743 S.W.2d at 338.

*Allison* and *Heartland Communications* generally support appellants' argument. Both cases hold that in a (b)(2) class action the predominant remedy requested must be injunctive or declaratory relief. *Allison*, 151 F.3d at 425; *Heartland Communications*, 161 F.R.D. at 117. Claims for monetary relief "predominate unless they are incidental to related claims for injunctive or declaratory relief. Incidental damages are damages that flow directly from liability to the class as a whole on claims forming the basis of the injunctive or declaratory relief." *Allison*, 151 F.3d at 425. However, the *Allison* court, while upholding the trial court's denial of class certification under Rule 23(b)(2),[1] (the federal counterpart to Tex.R. Civ. P. 42(b)(2)), also noted:

> We recognize that, as a matter of degree, whether a given monetary remedy qualifies as incidental damages will not always be a precise determination. Nor is it intended to be. "[C]omplex cases cannot be run from the tower of the appellate court given its distinct institutional role and that it has before it printed words rather than people." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). The district courts, in the exercise of their discretion, are in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief to be appropriate in a (b)(2) class action.

*Allison*, 151 F.3d at 416.

The *Wiggins* court acknowledged the advisory committee's note to the amendment of federal Rule 23 that states: "[S]ubdivision [ (b)(2) ]does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." While finding no error

in the Rule 42(b)(2) certification, *Wiggins* further stated:

> Moreover, disputes over the *primary* thrust of the action, whether primarily for injunctive or declaratory relief on one hand, or for money damages on the other hand, should be avoided because such characterizations neither promote disposition on the merits nor represent a useful expenditure of energy. *See* Wright, Miller & Kane at § 1775. If, as in the case at bar, the prerequisites of subsection (a) have been met and declaratory or injunctive relief is requested, the action should be allowed to proceed under (b)(2), especially in light of the trial court's power under rule 42(d)(1) (counterpart to federal rule 23(c)(4)(A)) to confine the class action to those issues pertaining to the declaratory aspects of the case and to cause the damage claims to be tried separately, if appropriate. *See id.;* Tex.R. Civ. P. 42(d)(1). It is sufficient that the declaratory aspects are major aspects, substantially more than incidental baggage added onto a case wherein money damages is the prime objective.

*Id.* Here, Owens claims that the request for injunctive relief is a significant issue, and he seeks injunctive relief to prohibit appellants from charging excessive late fees in the future. As explained in *Allison*, the district court is in the best position to determine if the monetary relief is sufficiently incidental so as to be appropriate in a (b)(2) class action. *Allison*, 151 F.3d at 416.

■ Moreover, class certification may be appropriate under more than one section of Rule 42(b). *See Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689, 694–95 (M.D.Fla.1996). In *Diaz*, the defendants opposed (b)(2) certification on the grounds that the issues of causation and damages should be considered individually, and, therefore, predominated over the common claims for injunctive and declara-

---

1. Tex.R. Civ. P. 42 is patterned after Fed. R.Civ.P. 23. *Wiggins*, 743 S.W.2d at 335 n. 4.

tory relief. *Id.* The *Diaz* court, in determining that a hybrid (b)(2) class was the "appropriate mechanism" for the resolution of the case, stated:

A hybrid class consists of two stages. In Stage I, the Court resolves the issue of liability under the procedures of Rule 23(b)(2), and the issue of damages is resolved in Stage II using the "opt out" procedures established for Rule 23(b)(3) actions.

In Stage I, class members cannot "opt out" of the class action in order to pursue their own remedies, hence Defendants will not be subject to multiple trials and inconsistent adjudications. If liability is established in Stage I, the case will progress to a Stage II proceeding to determine the damages, if any, that individual class members are entitled to recover. Such an individualized determination will protect the interests of all class members.

*Id.* (citation and footnote omitted).

The trial court here has certified the class under multiple sections—TEX. R. CIV. P. 42(b)(1)(A), 42(b)(4), and 42(b)(2), which is appropriate as explained in *Diaz*. We find no abuse of discretion by the trial court in allowing certification under these sections.

### Standing

■ Appellants further contend Owens lacks standing to assert claims for injunctive relief individually or on behalf of a class because he cannot demonstrate that a credible threat exists of his again being subjected to the specific injury for which he seeks injunctive or declaratory relief. In support of their position, appellants rely on two cases: *Tarrant County, Texas Comm'rs Court v. Markham*, 779 S.W.2d 872, 876 (Tex.App.—Fort Worth 1989, writ denied) (former inmate could not represent class because he was not under threat of being returned to same jail), and *Nelsen v. King County*, 895 F.2d 1248, 1249–52 (9th Cir.1990) (plaintiffs asserted claims under 42 U.S.C. § 1983 regarding conditions in

drug rehabilitation center where they had been confined).

■ "Standing to bring a lawsuit is one of the two aspects of mootness." *Markham*, 779 S.W.2d at 876. "The concept of mootness dictates the courts will not hear controversies unless (1) the issues are 'live' and (2) the parties have a cognizable interest in the outcome." *Id.* Clearly, the controversy over appellants' late fees is "live" between appellants and members of the class that Owens seeks to represent. Therefore, the first aspect of mootness has been fulfilled.

■ We next consider the second aspect of mootness—whether Owens has standing to pursue an injunction. The question of standing is "whether the party invoking ... jurisdiction has 'a personal stake in the outcome of the controversy....'" *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Traditionally, courts have held that this "personal stake" must exist at the commencement of the litigation and continue throughout the lawsuit's existence. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–98, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 491–92 (1980).

■ However, there is an exception to this general rule. A plaintiff may continue litigation once it is commenced despite the loss of his or her personal stake in the outcome of the litigation if it is demonstrated that the claim will likely arise again and otherwise evade review. *See Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515–16, 31 S.Ct. 279, 55 L.Ed. 310 (1911). This exception is the "relation back doctrine." *Markham*, 779 S.W.2d at 876. "The doctrine has been used to allow the continuation of a class action suit where the named representative initially had a personal stake in the litigation at the time of filing the suit, but lost the personal stake during the course of the litigation." *Id.* (citing

*United States Parole Comm'n,* 445 U.S. at 398, 100 S.Ct. at 1205, 63 L.Ed.2d at 491). Applying the "relation back doctrine" to the facts of this case, we note that appellants acknowledge Owens "paid the fee seven separate times after retaining counsel and filing this lawsuit challenging its validity." Clearly, Owens had a personal stake at the time of filing suit.

■ Finally, appellants argue that Owens additionally lacks standing to seek declaratory or injunctive relief because he has a forum (the City of Beaumont) to which he may address his complaints regarding the assessment of administrative fees. Contending that the doctrine of "primary jurisdiction" applies, appellants refer us to *Lens Express, Inc. v. Ewald,* 907 S.W.2d 64 (Tex.App.—Austin 1995, no writ), and *Television Cable Serv., Inc., v. Bryant,* 684 S.W.2d 196 (Tex.App.—Eastland 1984, no writ).

■ The theory of primary jurisdiction is that "when the Legislature has delegated the power to an administrative body to regulate a particular industry or business, the courts may not or will not interfere until the board or bureau has had an opportunity to pass upon the matter and has remedied, or attempted to remedy, the situation." *Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411 (1961). " 'Primary jurisdiction is a judicially created doctrine of abstention whereby a court that has jurisdiction over a matter nonetheless defers to an administrative agency for an initial decision on questions of fact or law within the peculiar competence of the agency.' " *In re Luby's Cafeterias, Inc.,* 979 S.W.2d 813, 816 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (quoting *State Bar v. McGee,* 972 S.W.2d 770, 772 (Tex.App.—Corpus Christi 1998, no writ) (quoting 2 Tex. Jur. 3d Administrative Law § 78 (1995)). However, several exceptions to the primary jurisdiction rule exist: (1) where the issue is one inherently judicial in nature, the courts are not ousted from jurisdiction, unless the Legislature, by a valid statute, has explicitly

granted exclusive jurisdiction to the administrative body; (2) the primary jurisdiction rule does not apply when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief; and (3) and intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers. *Lake Country Estates, Inc. v. Toman,* 624 S.W.2d 677, 681 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.) (citing *Foree v. Crown Cent. Petroleum Corp.,* 431 S.W.2d 312 (Tex.1968), and *Westheimer Indep. Sch. Dist. v. Brockette,* 567 S.W.2d 780 (Tex.1978)).

Appellants assert the City of Beaumont has established a complaint procedure for cable subscribers to raise grievances with the franchise authority through enactment of Beaumont Ordinance No. 75–70. The complaint procedure established by the City is minimal. Beaumont, Tex., Ordinance 75–70, § VI(5) (Nov. 25, 1975). It provides as follows:

> Any subscriber of the cable company may file a written complaint with either the City Manager or the cable company, each of which, shall within five (5) days thereof, forward copies of such complaints to the other party. The Company shall forward to City, at the end of three (3) month intervals, all written complaints of subscribers together with a report on the manner in which all complaints have been met. The Company shall notify each subscriber at the time of initial subscription to the system of these procedures for reporting and resolving complaints.

*Id.* Appellants direct us to no provision, and we find none, where the City of Beaumont is given authority to grant the injunctive relief sought or to make incidental findings that are essential to the granting of relief. *See generally Toman,* 624 S.W.2d at 681. Furthermore, the ordinance provides in Section III(1): "The au-

thority and rights herein granted shall take effect upon the effective date of this ordinance, (April 1, 1976), and shall continue in force and effect for a period of fifteen (15) years commencing on said date, unless sooner terminated as provided herein." We are not referred by appellants' brief to any extension of the ordinance that would give it effect beyond 1991 or any other record references that show a complaint procedure for the City of Beaumont existed after 1991 or that any expansion of the procedure has occurred.

Under these circumstances, the primary jurisdiction rule does not apply to require the trial court to defer to the City of Beaumont. Appellants' standing arguments do not show that the trial court abused its discretion in certifying the class.

Viewing the evidence in the light most favorable to the trial court's action, and indulging every presumption in favor of the trial court's action, we cannot find that the trial court abused its discretion in certifying the class or approving Owens as class representative. Appellants' issue is overruled. Accordingly, the class certification order is affirmed.