David W. NOELL, Individually and As Limited Partner in Crow–Billingsley Air Park Limited Partnership, Appellant

v.

AIR PARK HOMEOWNERS ASSOCIATION, INC., et al., Appellees.

No. 05–06–00132–CV.

Court of Appeals of Texas, Dallas.

Feb. 29, 2008.

Marty D. Price, Attorney & Counselor at Law, Dallas, Daniel B. Jones, Plano, TX, for Appellant.

Paul C. Sewell, Rebecca Lynn Kimmel, Tod B. Edel, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, William and Patricia Cline, Plano, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice MOSELEY.

Appellant David W. Noell, individually and a limited partner in Crow–Billingsley Air Park Limited Partnership (CBA), sued CBA; its general partner, Airpark G.P., L.L.C., a Texas limited liability corporation; and Henry Billingsley, individually. (Collectively, these defendants are referred to as "the Billingsley parties.") Later, he amended his pleadings to seek a declaratory judgment against appellees Air Park Homeowners Association, Inc., and certain individual homeowners in the Air Park.[1] (These parties will be referred to as "the homeowner parties.") The trial court granted the homeowner parties' plea to the jurisdiction and special exceptions, dismissed Noell's claim against them for lack of jurisdiction, and severed that claim from the suit, making the trial court's judgment on that claim final. Noell brings five issues, complaining the trial court erred in granting the plea to the jurisdiction and special exceptions, dismissing the homeowner parties, and severing his claim against them. For the reasons stated below, we resolve Noell's three dispositive issues against him and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Noell and his father Milton formed Air Park Associates, a general partnership to develop property in Collin County as a residential air park for airplane-owning homeowners. The developments included residential lots, streets, an airport runway, taxiways, and related aviation and commercial structures. According to Noell, after a sale of a fifty percent interest in Air Park to Henry Billingsley and the formation of CBA, it (CBA) held title to the real property known as Air Park. Eventually, as determined by an interlocutory summary judgment in the Billingsley

---

1. These individual homeowners are: Curtis and Susan Hodgson; George Bown; Robert Owen; Ken and Sammie Larson; Timothy and Marciela Allish; David Etter; Phil Eggers; Dick Schiltz; Alfred and Sherly Pick; John and Margie Hammond; Scott and Holly Meyer; Stan and Cherly Bowlin; David Key; Paul and Sue Whitesell; David Seals; Gary Cobb; Jim and Ruth Swick; Rick and Janet Cathriner; Tony and Dewan Mazzu; Dale and Gloria Burgdorf; Bob Coday; Dean and Juliet Mize; Yuri Bebic; Jim and Scherle Barth; Lionel Mckamy; Walter and Mickey Fuller; Mary Lou Fairchild; Paul Whelan; R.B. Seals; Jack Winthrop; and William and Patricia Cline.

parties' favor, Noell owned a twenty-five percent limited partner interest in CBA; Billingsley owned a seventy-four percent limited partner interest in CBA; and Air Park, G.P., L.L.C. owned a one percent general partnership interest in CBA. Noell had a month-to-month lease agreement with CBA as the airport operator and manager.

In October 2004, CBA cancelled Noell's lease. In November 2004, Noell sued the Billingsley parties, alleging they had breached their partnership duties by, among other things, terminating the lease. Noell requested an accounting and judicial dissolution of CBA. Noell later amended to request a declaration construing the CBA limited partnership agreement and the Air Park Associates contract of sale and determining whether CBA or Noell, as a former partner in Air Park Associates, owed certain duties and covenants to the Air Park homeowners. Eventually the trial court granted summary judgment in the Billingsley parties' favor declaring Noell's lease terminated.

Thereafter, Noell filed his second amended petition adding the homeowner parties. Noell alleged the Billingsley parties refused to acknowledge any duty or responsibility to the homeowner parties. He sought declaratory relief construing the CBA limited partnership agreement and Air Park Associates' sales literature and contract of sale with homeowners. Specifically, he sought a determination of whether he, CBA, or Billingsley owed any duties, obligations, or covenants to the homeowner parties. After the trial court granted the homeowner parties' special exceptions, Noell filed his third amended petition. In his request for declaratory judgment and relief, he requested fourteen specific declarations relating to the runway, taxiways, and roads.

The homeowner parties filed a plea to the jurisdiction and special exceptions directed to the third amended petition, contending the trial court lacked subject matter jurisdiction because the issues were not ripe and there was no justiciable controversy. Following a hearing, the trial court granted the plea to the jurisdiction and special exceptions and dismissed the declaratory judgment claim against the homeowner parties for lack of jurisdiction. The trial court subsequently granted the homeowner parties' motion to sever, making the judgment final as to them. This appeal followed.[2]

## II. PLEA TO THE JURISDICTION

In his third and fourth issues, Noell contends the trial court erred in granting the plea to the jurisdiction and dismissing the homeowner parties because he pleaded a "real and bona fide justiciable controversy" upon which declaratory relief could be granted.

### A. Standard of Review and Applicable Law

Subject matter is essential to a trial court's power to decide a case; a plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000). Whether a court has subject matter jurisdiction is a question of law to be reviewed *de novo*. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). In performing this review, we do not look to the merits of the plaintiff's case, but consider only the pleadings and the evidence perti-

---

**2.** The Billingsley parties are not parties to this appeal. Nevertheless, they filed a brief, to which Noell replied. *See* Tex.R.App. P. 3.1(c)

(defining "appellee" as "a party adverse to an appellant").

nent to the jurisdictional inquiry. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). A trial court properly dismisses claims over which it has no subject matter jurisdiction. *Thomas v. Long*, 207 S.W.3d 334, 338 (Tex.2006); *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex.2001).

 The purpose of the Declaratory Judgments Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997). It is "remedial" and "is to be liberally construed." *Id.* The Declaratory Judgments Act is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

 A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (citations omitted).

 Ripeness is one of several categories of justiciability. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex.2001). The doctrinal purpose of ripeness is to prevent premature adjudication. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex.1998). The issue of ripeness thus questions when a particular action may be brought. *Id.* It inquires as to whether the facts have de-

veloped sufficiently so that an injury has occurred or is likely to occur. *Id.* The focus of the ripeness inquiry is therefore on whether the case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.*

 Ripeness involves both jurisdictional and prudential concerns. *See id.* at 442–43. Jurisdictionally, ripeness operates to prevent Texas courts from issuing advisory opinions, which are constitutionally prohibited. *See id.* (citing TEX. CONST. arts. II, § 1 & IV, §§ 1, 22); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Ripeness also has a pragmatic, prudential aspect, conserving judicial time and resources for real and current controversies rather than abstract, hypothetical, or remote disputes. *Id.* at 443.

 However, a justiciable controversy need not be a fully ripened cause of action. *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex.App.-Austin 1998, no pet.). To confer jurisdiction, the fact situation must manifest the "ripening seeds of a controversy." *See id.* at 153–54. Ripening seeds of a controversy "appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy." *Id.* at 154 (quoting *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 761 (Tex.Civ.App.-Beaumont 1954, no writ)). "A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Tex. Health Care Info. Council v.*

*Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex.App.-Austin 2002, pet. denied).

**B. Discussion**

Noell argues the trial court has jurisdiction because there is a controversy about who, if anyone, is responsible for the operation, maintenance, and control of the taxiways and runways and what rights of interest the homeowner parties have in the real property and improvements. Noell alleged that the obligations and duties arise from two sources independent of the covenants running with the land: an Air Park sales brochure and an Air Park contract of sale recorded in the Collin County Real Property Records under a "Notice of Claim" by two Air Park homeowners.

The sales brochure stated, in part:

A whole new concept of "air age living," for people who want something different. . . . An airplane landing strip is conveniently arranged with accompanying taxiways to serve each home. . . .

An airport service area is located on the east side of the airplane landing strip. This area being privately owned and operated mostly as a hangar service is also highly restricted for the benefit of the home owners. . . . One first class airplane maintenance facility will be available to serve the home owners. . . . Hangar space and accompanying office space, or storage space, will be available on an annual lease basis.

The contract of sale provided, in part:

An aircraft landing area . . . will at all times be available to the homesites property owners [sic] via taxiways arranged according to said plat filed in Collin County, Map Records. *Said landing area will be owned, controlled and maintained by Air Park Associates, their heirs or assignees at no cost to the homeowners for a minimum period of ten years and will continue thereafter until such time as said landing strip might cease to be economically feasible and at which time said strip and taxiways will be donated to the homeowners in exchange for access and usage privileges without charge to the donors except for a proportionate part of the maintenance cost which will be determined by a board of three independent appraisers, if necessary.* In the event of discontinuance of use of said landing strip as an aircraft landing area, title to same will revert to the donors, their heirs or assignees.

Streets will be established and maintained in a condition for all weather travel to all lots having homes or hangers under construction and will be paved according to County Specifications within sixty days of residency to those homesites where a home has been completed. The aircraft landing strip will be lighted for night flying and will be paved . . . within six months after the bona fide sale of a total of fifty residential lots. (Emphasis added.)

Noell argues he pleaded sufficient facts to show a controversy and that the evidence shows "uncertainty and insecurity" concerning the existence of, and responsibility for, the following fourteen duties for which he sought declarations in his third amended petition:

(a) CBA and Billingsley have no duty to maintain and operate the Air Park runway (landing strip) and taxiways for the use and benefit [of] the Air Park homeowners;

(b) Alternatively, CBA and Billingsley have a duty to maintain and operate the Air Park runway (landing strip) and taxiways for the use and benefit of the Air Park homeowners;

(c) David Noell has no duty to maintain and operate the Air Park runway

(landing strip) and taxiways for the use and benefit of the Air Park homeowners;

(d) Alternatively, David Noell has a duty to maintain and operate the Air Park runway (landing strip) and taxiways for the use and benefit of the Air Park homeowners;

(e) The Air Park homeowners have no right, title or interest in the real property comprising the Air Park runway (landing strip), the taxiways or any of the common elements of the Air Park subdivision;

(f) Alternatively, Air Park homeowners have an interest in the real property comprising the Air Park runway (landing strip), the taxiways and the common elements of the Air Park subdivision;

(g) CBA and Billingsley have no duty to the Air Park homeowners to construct or maintain roads in the Air Park subdivision;

(h) Alternatively, CBA and Billingsley have a duty to the Air Park homeowners to construct or maintain roads in the Air Park subdivision;

(i) David Noell has no duty to the Air Park homeowners to construct or maintain roads in the Air Park subdivision;

(j) Alternatively, David Noell has a duty to the Air Park homeowners to construct or maintain roads in the Air Park subdivision;

(k) Neither CBA nor Billingsley have a duty to donate or convey the Air Park runway (landing strip) to the Air Park homeowners if it becomes economically unfeasible;

(l) Alternatively, CBA and Billingsley have a duty to donate or convey the Air Park runway (landing strip) to the Air Park Homeowners if the runway becomes economically unfeasible;

(m) David Noell has no duty to donate or convey the Air Park runway (landing strip) to the Air Park homeowners if the runway becomes economically unfeasible; and

(n) Alternatively, David Noell has a duty to donate or convey the Air Park runway (landing strip) to the Air Park homeowners if the runway becomes economically unfeasible.

Noell argues "the injury is already occurring" because the Billingsley parties have denied such obligations, and, by terminating Noell's lease, they have deprived him of the ability to fulfill any such obligations.

The homeowner parties and the Billingsley parties argue that none of these issues is ripe for adjudication and there is no current controversy between the homeowner parties and the Billingsley parties or Noell. We consider each group of allegations and the contents of the record relevant to them.

**1. Duty to Maintain and Operate Runway and Taxiways (Items (a) through (d))**

▮ Noell cites no pending unfilled maintenance or operation requests regarding the runway and taxiways. Noell did not allege, and did not offer evidence, that Billingsley denied responsibility for any duty or obligation to the homeowners for the provisions in the contract of sale relating to the runway and taxiways. Instead, he argues on appeal that evidence of a controversy arises from two sources. First, he cites Billingsley's oral deposition testimony quoted below:

Q: All right, Well, let me ask you this: In the event the Court-if the Court were to determine that this lease has been properly terminated and a-a lot owner or resident owner at Air Park calls you and says we need

to get the taxiways repaired, do you feel that would be your responsibility to repair that taxiway?

A: If we take over the operation of it we'll do whatever we're obligated to do.

Q: What is that?

A: I don't know.

Second, Noell relies on Billingsley's response to an interrogatory:

Interrogatory: Do you contend that you have any duty to perform the covenants described in the original Air Park Estates Contracts of Sale to third-party homeowners? If your answer is no, please explain the basis for your answer. Please identify and describe all documents supporting your answer.

Answer: Billingsley objects to this Interrogatory as overly broad and unduly burdensome insofar as it asks him to identify and describe all documents supporting his answer. Subject to and without waiving his objection, Billingsley answers as follows:

No. Billingsley was not a party to the original Air Park Estates Contracts of Sale. Noell has previously testified that, as a result of previous litigation, he is the only person with any obligations under the original contracts.... See also *Air Park-Dallas Zoning Committee v. Crow–Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 904 (Tex.App.-Dallas 2003, no pet.).

The deposition testimony merely indicates that Billingsley is personally unfamiliar with the duties and obligations to the homeowner parties from any source. The discovery answer merely shows that there is no dispute between Billingsley and Noell on the obligations under the contracts of sale. Even if it is true, as Noell alleged, that Billingsley desires "to ultimately close the airport and airport runway," there is

no evidence that the Billingsley parties have taken any steps to close the runway and taxiways. At most, this evidence shows uncertain or contingent future events related to the runway and taxiways that may not occur as anticipated or indeed may not occur at all. *See Patterson*, 971 S.W.2d at 442. In addition, we cannot conclude that there is any evidence of "threatened litigation in the immediate future which seems unavoidable," particularly when counsel for the homeowner parties argued at the hearing on the plea to the jurisdiction and special exceptions that "[t]here is no dispute here." *See Moore*, 985 S.W.2d at 153.

**2. Duty to Donate Runway and Homeowners Parties' Interest in Common Elements (Items (e), (f), and (k) through (n))**

 These allegations are centered on the italicized language in the contract of sale. That provision is explicitly contingent on a future finding of economic unfeasibility: the Air Park landing strip "will be owned, controlled and maintained by Air Park Associates, their heirs or assignees at no cost to the homeowners for a minimum period of ten years and will continue thereafter *until such time as said landing strip might cease to be economically feasible* and at which time said strip will be donated to the homeowners." (Emphasis added.) Allegations (k) through (n) relate to the same hypothetical, future finding of economic unfeasibility.

Noell cites no evidence that such a finding has been made or is imminent. Noell relies on Billingsley's intentions to develop the Air Park commercially and on a statement in a TRO hearing that "it is now time to develop this property [i.e., the Air Park]." However, Noell acknowledges in his brief that the CBA partnership agree-

ment expressly states that development requires "new and additional agreements." There is no allegation that Billingsley has attempted to amend the partnership agreement or enter into any new and additional agreements. There is no allegation that Billingsley has attempted to close the runway or the taxiways or begin commercial development. As to allegations (e) and (f) specifically, there is no evidence that the homeowner parties have claimed any right, title, or interest in any real property comprising the runway, taxiways, or any common elements. At the hearing, counsel for the homeowner parties argued, "There is no allegation here that anybody has done anything wrong as it relates to the Plaintiff and my clients."

Noell also relies on a December 8, 2004 letter from the president of the Air Park Homeowners Association, Inc. to Noell regarding "Dallas Airpark Runway/Taxiway Obligations":

> Air Park Homeowners Association (APHA) has become aware of the litigation between the partners of Crow–Billingsley Associates (CBA). It is our understanding that issues concerning the obligation of Air Park Associates (APA) and/or it's [sic] assignees to provide the runway/taxiway at no charge, or donate said runway/taxiways to the homeowners should be clarified. Please inform the APHA as soon as possible what your intentions are concerning the fulfillment of the obligation more specifically, would that obligation be Mr. Noell's or CBA.

Nothing about this letter suggests any threatened litigation by the homeowner parties. Nothing shows Noell answered the letter, or that any correspondence or action followed it. As noted above, counsel for the homeowner parties argued at the hearing that there is "no dispute here." Accordingly, we cannot conclude this evi-

dence shows an injury has occurred or is likely to occur or the ripening seeds of a controversy. *See Patterson,* 971 S.W.2d at 442; *Moore,* 985 S.W.2d at 153.

### 3. Duty to Construct or Maintain Roads (Items (g) through (j))

 Noell argues there is a controversy regarding the construction and maintenance of roads, evidenced by a May 2004 request by the owner of lot 68 asking Noell to construct a road to his lot. In his third amended petition, Noell stated that he submitted this request to Billingsley and CBA, and they refused to construct the road. However, the owner of lot 68 is not among the individual homeowners sued by Noell, and Noell admitted in that pleading that he had already constructed the road. Thus, there is no controversy about this particular road, and Noel does not refer to any other evidence about roads. As above, we cannot conclude this evidence shows that an injury has occurred or is likely to occur or the ripening seeds of a controversy. *See Patterson,* 971 S.W.2d at 442; *Moore,* 985 S.W.2d at 153.

We conclude this evidence shows "merely a theoretical dispute" rather than "a real and substantial controversy" or the ripening seeds of a controversy between Noell or the Billingsley parties and the homeowner parties, and therefore there is no justiciable controversy. *See Beadle,* 907 S.W.2d at 467.

### 4. Conclusion

Accordingly, we conclude the trial court did not err in concluding it had no subject matter jurisdiction over Noell's declaratory judgment claim against the homeowner parties. Thus, the trial court did not err in dismissing this claim. *See Thomas,* 207 S.W.3d at 338; *Fodge,* 63 S.W.3d at 805. We resolve Noell's third and fourth issues against him. We need not address his first and second issues in which he argues

the trial court erred in granting the home-owner parties special exceptions directed to his second amended petition. *See* Tex. R.App. P. 47.1.

## III. SEVERANCE

In his fifth issue, Noell argues the trial court erred in severing his claim against the homeowner parties because they are necessary parties to his claims against the Billingsely parties.

 "Any claim against a party may be severed and proceeded with sepa-rately." Tex.R. Civ. P. 41. A trial court has broad discretion in determining wheth-er severance should be granted. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 812 (Tex.App.-Austin 1997, no pet.). General-ly, appeals may only be taken from final judgments or orders. *Thomas*, 207 S.W.3d at 338. The homeowner parties argued that the trial court's order sustain-ing their plea to the jurisdiction and spe-cial exceptions disposed of Noell's claim against them, and they had no interest in the remaining pending claims between Noell and the Billingsley parties. They argued severance was proper so the ruling on the plea to the jurisdiction could be-come final and appealable.

Because we have determined that the trial court did not err in dismissing Noell's declaratory judgment claim against the homeowner parties for lack of subject mat-ter jurisdiction, we further conclude the trial court did not abuse its discretion in severing that claim. *See Guidry,* 944 S.W.2d at 812 (concluding when summary judgment in favor of single defendant proper with multiple defendants, severance also proper to make summary judgment appealable). We resolve Noell's fifth issue against him.

## IV. CONCLUSION

Having resolved Noell's three dispositive issues against him, we affirm the trial court's judgment.