

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00143-CV

_____

JAMES H. WATSON AND OTHERS SIMILARLY SITUATED, Appellant

V.

CITY OF SOUTHLAKE, Appellee

_____

No. 02-18-00151-CV
_____

JAMES H. WATSON AND OTHERS SIMILARLY SITUATED, Appellant

V.

CITY OF ALLEN, CITY OF AMARILLO, CITY OF ARLINGTON, CITY OF AUSTIN, CITY OF BALCH SPRINGS, CITY OF BALCONES HEIGHTS, CITY OF BASTROP, CITY OF BAYTOWN, CITY OF BEDFORD, CITY OF BURLESON, CITY OF CEDAR HILL, CITY OF CONROE, CITY OF COPPELL, CITY OF CORPUS CHRISTI, CITY OF DALLAS, CITY OF DENTON, CITY OF DUNCANVILLE, CITY OF EL PASO, CITY OF ELGIN, CITY OF FARMERS BRANCH, CITY OF FORT WORTH, CITY OF FRISCO, CITY OF GARLAND, CITY OF GRAND PRAIRIE, CITY OF HALTOM CITY, CITY OF HUMBLE, CITY OF HURST, CITY OF HUTTO, CITY OF IRVING, CITY OF JERSEY VILLAGE, CITY OF KILLEEN, CITY OF LEAGUE CITY, CITY OF LITTLE ELM, CITY OF LONGVIEW, CITY OF MARSHALL, CITY OF MESQUITE, CITY OF NORTH RICHLAND HILLS, CITY OF RICHLAND HILLS, CITY OF ROANOKE, CITY OF ROUND ROCK, CITY OF TOMBALL, CITY OF UNIVERSITY PARK, CITY OF WATAUGA, AMERICAN TRAFFIC SOLUTIONS, INC., AMERICAN TRAFFIC SOLUTIONS, LLC, XEROX STATE & LOCAL SOLUTIONS INC., AND THE STATE OF TEXAS, Appellees

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court Nos. 153-278080-15, 153-298996-18

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Opinion by Justice Birdwell

# OPINION

Appellant James H. Watson challenges the constitutionality of the state and local laws that provided for automated red-light cameras. He sues on behalf of a putative class of citizens, seeking a declaration and injunction against enforcement of these red-light-camera laws, as well as the return of the fines that he and other citizens were assessed.

In this consolidated appeal, Watson contends that the trial court erred by granting pleas to the jurisdiction in favor of all but one defendant. While Watson's appeal was pending, the Texas Supreme Court addressed a nearly identical set of arguments against the constitutionality of red-light-camera laws, and it rejected the appellant's challenges on grounds of standing, immunity, and failure to exhaust administrative remedies. *See Garcia v. City of Willis*, No. 17-0713, 2019 WL 1967140, at *3–7 (Tex. May 3, 2019). Also while this appeal was pending, the Legislature undid the whole of the red-light-camera statute, repealing it and replacing it with a measure that generally prohibited the use of red-light cameras for traffic enforcement. Act of May 17, 2019, 86th Leg., R.S., ch. 372, H.B. 1631, §§ 2, 6; *see* Tex. Transp. Code Ann. § 707.020. Thus, following the guidance of *Garcia*, and accounting for the effect of the Legislature's repeal, we reject Watson's arguments and affirm.

## I.   BACKGROUND

In 2002, the Texas Office of Attorney General issued an opinion suggesting that under state law at the time, cities could not use red-light cameras to impose civil

3

penalties. *See* Tex. Att'y Gen. Op. No. JC-0460 (2002). In 2007, the Legislature responded to that opinion by enacting chapter 707 of the transportation code, which authorized municipalities to establish, by ordinance, a system of red-light cameras and civil fines. *See* Act of May 16, 2007, 80th Leg., R.S., ch. 1149, § 1, 2007 Tex. Gen. Laws 3924 (former Tex. Transp. Code Ann. §§ 707.001–.019). Under the former statute, participating municipalities could assess a civil fine of up to $75 for red-light violations, along with a late fee of up to $25 if payment was not timely made. *Id.* (former Tex. Transp. Code Ann. § 707.007). If the penalty was not paid at all, the statute authorized the Texas Department of Motor Vehicles to refuse to renew the vehicle's registration. *Id.* (former Tex. Transp. Code Ann. § 707.017(a)). The statute provided that persons charged with violations could contest the penalty at an administrative hearing. *Id.* (former Tex. Transp. Code Ann. § 707.014(a)).

After the enactment of chapter 707, the City of Southlake adopted a red-light-camera ordinance, as did many other municipalities. Southlake's ordinance provided that violations were subject to a civil fine of $75, a $25 late fee, and additional fees if the violator's check was returned for insufficient funds.

On Halloween of October 2014, Watson, a resident of Louisiana, was cited for violating Southlake's ordinance. It is undisputed that Watson did not take advantage of his administrative remedies. Instead, he filed suit in district court. Watson alleged that he was not in the vehicle or even in the state of Texas at the time of the purported violation, and he did not give permission to whoever was driving his vehicle. Watson

4

alleged that he nonetheless paid the $75 fine under duress, fearing that he would be assessed late fees, would be refused renewal of his registration, and would suffer damage to his credit score.

However, Watson did not simply sue Southlake for the return of his $75. Rather, Watson sought class certification and purported to sue on behalf of all others who had been affected by Texas's red-light-camera laws. To that end, Watson sued municipalities throughout Texas that had enacted red-light-camera ordinances. Watson also sued Redflex Traffic Systems, Inc., the private company that administered Southlake's red-light-camera program, as well as three other similarly situated private administrators: American Traffic Solutions, Inc.; American Traffic Solutions, LLC; and Xerox State & Local Solutions, Inc. Finally, Watson's petition named the State of Texas as defendant for its role in enacting the unconstitutional enabling statute. In all, he sought the return of millions of dollars that had been, he said, wrongfully "fleeced" from citizens; he alleged an amount in controversy of well over a million dollars. Watson alleged several claims:

- unconstitutional takings;
- reimbursement of the civil fines;
- injunction prohibiting the government defendants from enforcing their red-light-camera laws;

- declaratory judgment that the red-light-camera laws were unconstitutional under several provisions of the Texas constitution; and

- claims for common law misrepresentation and deceptive trade practices violations against the private administrators.

Before long, many of the government defendants filed pleas to the jurisdiction. In its plea, the State of Texas argued that it was not involved in the issuance of Watson's fine, and Watson therefore lacked standing to bring claims against the State. According to the State, it was purely passive in the matter, and Watson had suffered a cognizable injury only at the hands of Southlake and Redflex—the entities which had issued his ticket. The State further reasoned that even if Watson had standing, his claims were barred by sovereign immunity. Many of the municipalities and private administrators voiced their own standing and immunity arguments. Other municipalities contended that Watson's claims were barred due to his failure to exhaust administrative remedies.

On April 6, 2018, the trial court rendered two orders concerning the pleas to the jurisdiction, from which Watson appeals. In one order, the trial court granted Southlake's plea to the jurisdiction on the basis of immunity. Watson subsequently filed an accelerated interlocutory appeal of that order in appellate cause number 02-18-00143-CV.

In another order, the trial court granted pleas to the jurisdiction in favor of all defendants except Southlake and Redflex, reasoning that Watson had no standing to

6

raise his claims against the State, the other municipalities, or the private administrators who were not involved in Watson's ticket. The trial court subsequently severed these claims and rendered a final judgment dismissing them with prejudice. Watson timely appealed this final judgment in appellate cause number 02-18-00151-CV. Together, the order and the judgment left Redflex as the only remaining defendant in the case. We consider Watson's appeals together.

## II. STANDING & MOOTNESS

The trial court implicitly concluded that Watson had standing to sue Southlake and Redflex, but it explicitly concluded that he lacked standing to sue any of the other defendants who were not involved in his particular ticket.

By what we deem his first issue, Watson challenges the trial court's ruling that he lacked standing to sue any of these other defendants. Before we consider his issue, however, we take up sua sponte the question of whether Watson had standing to bring prospective claims against any defendant in this appeal.

## A. Applicable Law

Standing is a question of law that we review de novo. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149–50 (Tex. 2012). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Id.* at 150. When assessing a plea to the jurisdiction, our analysis begins with the live pleadings. *Id.* We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* Because it is a component of subject matter jurisdiction, standing cannot be waived

7

and may be raised for the first time on appeal. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018).

"In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* Under Texas law, the standing inquiry begins with determining whether the plaintiff has personally been injured. *Id.* at 485. The second element requires that the plaintiff's alleged injury be "fairly traceable" to the defendant's conduct. *Id.* To establish the third standing requirement, a plaintiff must show that there is a substantial likelihood that the requested relief will remedy the alleged injury. *Id.*

Standing is a "prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Garcia*, 2019 WL 1967140, at *2. We are "duty-bound" to explore potential standing problems sua sponte. *See id.*

## B.    Watson Lacks Standing to Raise Prospective Claims for Relief

Watson seeks two forms of prospective relief. First, he seeks a declaration that multiple sections of the statute—and the ordinances enacted under that statute—are unconstitutional. Second, he seeks injunctive relief prohibiting all defendants from enforcing or collecting money under these red-light-camera laws. Watson also raises several claims for retrospective relief, including claims for takings and reimbursement.

In *Garcia*, the court faced similar claims for prospective and retrospective relief. According to the *Garcia* court, the standing doctrine did not foreclose Garcia's retrospective claims, but Garcia lacked standing to bring his prospective claims for

8

declaratory and injunctive relief. *Id.* at *3–4. The court reasoned that Garcia had already paid his civil fine, and he had not pleaded that he faced any further threat of imminent harm under the statute. *Id.* at *3. Garcia had resolved his only infraction, and the threat of new infractions was "speculative" at best. *Id.* Garcia therefore had "no concrete or particularized stake in the validity or future application" of the red-light-camera laws that was distinguishable from the public at large. *Id.* at *3–4. "With no personal stake in the future application of the ordinance or relevant state statutes, Garcia lack[ed] the particularized interest for standing that prospective relief requires." *Id.* at *4.

The same reasoning holds true here. Having resolved his only violation by paying the civil fine, Watson has put any imminent threat of injury into the past. The prospects that Watson, who is a resident of Louisiana, will face any further consequences under Texas's red-light-camera laws are remote to the point of being "conjectural or hypothetical." *Meyers*, 548 S.W.3d at 485 (cleaned up) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (plurality op.)); *see Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (finding threat of future injury "conjectural," in challenge to texting-while-driving ordinance, where any future fine was "contingent upon her once again driving while using her cell phone and receiving a citation under the Chicago ordinance"). Watson may yet have standing to raise retrospective claims against the State and Southlake, the parties who allegedly injured him directly. *See Meyers*, 548 S.W.3d at 485. However, as to his claims for prospective relief, he "stands in the same shoes as any other citizen who might potentially be fined

9

for running a red light." *See Garcia*, 2019 WL 1967140, at *4. He therefore lacks standing to raise prospective claims for declaratory and injunctive relief against any defendant in this appeal.

**C.    Watson Lacks Standing to Sue Other Municipalities and Private Administrators for Retrospective Relief**

We next take up the question presented by Watson's first issue: whether he had standing to bring retrospective claims against any of the other municipalities and private administrators that were not involved in his ticket. Watson maintains that despite the lack of direct harm, he nonetheless has standing to sue them on behalf of the putative class under the "juridical link" doctrine. Watson argues that under this doctrine, standing exists as to all defendants in the case, even those who were not involved in his ticket. As we explain, the juridical link doctrine is inapplicable here, and Watson cannot use that doctrine to bring even retrospective claims against defendants who never harmed him.

A plaintiff who brings a class action, rather than just suing on his own behalf, must still prove that he individually has standing to sue. *Heckman*, 369 S.W.3d at 151. The court must consider this threshold question even before reaching the separate issue of whether it can certify the putative class. *Id.* Just as it must dismiss a case where the plaintiff lacks standing to bring any of his claims, a court must dismiss a class action for want of jurisdiction if the named plaintiff entirely lacked *individual* standing at the time he sued. *Id.* But a plaintiff who seeks to represent a class, yet lacks standing on some

10

of the purported class's claims, does not completely lack standing to bring any claims. *Id.* For every claim, there must be a named plaintiff with standing; "a claim survives the initial standing inquiry so long as at least one named plaintiff has standing to bring it." *Id.* at 152.

To show standing, the plaintiff's alleged injury must be "fairly traceable" to the defendant's conduct because "a court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Meyers*, 548 S.W.3d at 485. Thus, generally, a plaintiff cannot represent those having causes of action against whom the plaintiff has no cause of action and from whose hands he has suffered no injury. *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex. App.—Dallas 1993, no writ) (*citing La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973)). "This rule applies even if the plaintiffs' injuries are identical to those of the parties they are representing." *Id.*

However, Texas has recognized two exceptions to this rule: "(1) situations in which all injuries are the result of a conspiracy or concerted scheme among the defendants; and (2) instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *TCI Cablevision of Dall., Inc. v. Owens*, 8 S.W.3d 837, 843 (Tex. App.—Beaumont 2000, pet. dism'd) (quoting *Cedar Crest*, 889 S.W.2d at 331); *Tex. Commerce Bank Nat'l Ass'n v. Wood*, 994 S.W.2d 796, 806–07 (Tex. App.—Corpus Christi 1999, pet. dism'd w.o.j.) (op. on reh'g);

11

*see Tex. Educ. Agency v. Leeper*, 843 S.W.2d 41, 55 (Tex. App.—Fort Worth 1991) (recognizing the "juridical link" exception), *aff'd in part, rev'd in part on other grounds*, 893 S.W.2d 432 (Tex. 1994). A "juridical link" is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions. *Leeper*, 843 S.W.2d at 55. A juridical linkage is most often found where all defendants are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, rule, or practice of statewide application that is alleged to be unconstitutional. *TCI Cablevision*, 8 S.W.3d at 843 (quoting *Cedar Crest*, 889 S.W.2d at 332). "In that situation, allowing a class suit against a defendant class really is an alternative means of permitting plaintiffs to sue the state itself." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 953 (W.D. Tex. 2011), *vacated in part on other grounds*, 667 F.3d 570 (5th Cir. 2012). Thus, "if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact." *Payton v. Cty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (citing *Fallick v. Nationwide Mut. Ins.*, 162 F.3d 410, 423–24 (6th Cir. 1998), and *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838–39 (11th Cir. 1990)).

Watson contends that the juridical link doctrine is implicated here because he has alleged that all defendants—the State, the municipalities, and the private administrators—were uniformly acting pursuant to a statute that is unconstitutional.

Watson claims that the juridical link doctrine therefore endows the class with standing as to all defendants, even those who were not directly involved in the ticket issued to him. As support, Watson cites the Seventh Circuit's justification for the juridical link doctrine: once the requirements of class certification are met, the true plaintiff is the class as a whole, and if that class plaintiff has been wronged by all defendants, the class has standing to sue all defendants. *See id.* at 678–79; *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (same justification).

There is one problem with Watson's argument: in this case, there is no class. In his live petition, Watson prayed for certification of a class, but in the two and a half years that Watson's suit was on file, he did not pursue class certification any further than this. Watson never filed a motion for class certification; he did not request a hearing on this issue, and at the hearing on the defendants' pleas to the jurisdiction, he did not press the issue; he never asked for a ruling on class certification, and the trial court never made one; and Watson has not raised the issue of class certification on appeal. Watson's attempt at class certification therefore falls short under the rubrics of error preservation[1] and assignment of error.[2]

---

[1]"Rule 33.1(a) requires a timely and ruled-upon objection to preserve error." *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (citing Tex. R. App. P. 33.1(a)); *see Northrup v. Sw. Bell Tel. Co.*, 72 S.W.3d 16, 22 n.4 (Tex. App.—Corpus Christi–Edinburg 2002, pets. denied) (applying preservation requirements to class certification).

[2]"We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error." *Davis v. Mueller*,

In this posture, Watson cannot hope to proceed under his juridical linkage theory. As the Fifth Circuit has recognized, class certification is a precondition for the juridical link doctrine:

> This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purpose of Article III justiciability concerns. Because no class has been certified and because, for the reasons discussed below, Audler's direct claims must be dismissed, he cannot serve as the representative of any properly certified class. Therefore, even were we to recognize the juridical link doctrine as a basis for standing, Audler could not invoke it successfully. Without the prospect of class certification, Audler's claims against the Class Defendants are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing.

*Audler*, 519 F.3d at 248 (citations omitted). In our view, this rule is sound, because the juridical link doctrine does not operate as a shortcut that would allow Watson to entirely bypass the necessity for standing and the requisites for class certification, including "commonality" and "typicality."[3] Rather, the doctrine operates as a specialized appendage to those tests, slightly modifying the standing requirement of traceability and the class requirement of typicality to account for the special relationship among

---

528 S.W.3d 97, 103 n.38 (Tex. 2017) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)).

[3]Under Rule 42 of the Texas Rules of Civil Procedure, a plaintiff seeking class certification must satisfy four requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law[] or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 42(a); *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000).

14

defendants.[4]  But it cannot be applied without satisfying the tests for both standing and

class certification, in modified form, at the same juncture in the case.

---

[4]Some courts hold or imply that the juridical link doctrine relates to standing. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *Payton v. Cty. of Kane*, 308 F.3d 673, 678–79 (7th Cir. 2002); *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1205 (6th Cir. 1983).  Other courts say the doctrine relates to the requirements of class certification.  *See Mahon v. Ticor Title Ins.*, 683 F.3d 59, 64 (2d Cir. 2012); *Fallick v. Nationwide Mut. Ins.*, 162 F.3d 410, 423 (6th Cir. 1998); *Bazemore v. Friday,* 751 F.2d 662, 669 (4th Cir. 1984), *vacated in part on other grounds*, 478 U.S. 385, 106 S. Ct. 3000 (1986).

In our view, Texas cases show that the juridical link doctrine operates as a specialized modification to the requirements of both standing and class certification. As to standing, the doctrine modifies the requirement that the plaintiff's alleged injury must be "fairly traceable" to the defendant's conduct; under the juridical link doctrine, this element is satisfied so long as the named plaintiffs' injuries, as a whole, are fairly traceable to the juridically related defendants.  *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008).  Similar reasoning was applied by the Texas Supreme Court in *Heckman v. Williamson County*, 369 S.W.3d 137, 158 (Tex. 2012).  The *Heckman* court found the plaintiff class had standing to sue three county court at law judges, *id.*, even though there was "undisputed evidence that a visiting judge" had committed the alleged constitutional infraction against the named plaintiffs and "not any of the defendant county court at law judges," *id.* at 144–45.  The *Heckman* court reasoned that these defendants could justifiably be united for purposes of standing because the plaintiffs had sued them in their official capacity, effectively filing suit against the office of the court as a whole.  *Id.* at 158.  The court reached this conclusion as part of its analysis concerning the second element of standing, which asks whether the plaintiff's alleged injury is "fairly traceable" to the defendant's conduct.  *Id.* at 157.  By virtue of the same reasoning, the juridical link doctrine modifies the standing element of traceability, allowing the plaintiff class to trace its injury to a group of juridically related defendants. *See id.*  Indeed, the Beaumont Court of Appeals has held that a class had standing to trace its injuries to a group of juridically linked defendants, even when not every defendant had harmed every plaintiff.  *See Peters v. Blockbuster, Inc.*, 65 S.W.3d 295, 306 (Tex. App.—Beaumont 2001, no pet.).

As to class certification, several courts, including this one, have held that the doctrine modifies the requirement of typicality.  *See Tex. Commerce Bank Nat'l Ass'n v. Wood*, 994 S.W.2d 796, 806–07 (Tex. App.—Corpus Christi 1999, pet. dism'd w.o.j.); *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex. App.—Dallas 1993,

Without a bona fide attempt at class certification, there is no need to consider whether the juridical link test is satisfied. If the plaintiff fails to pursue class certification, that plaintiff has no right to maintain suit on behalf of the unnamed.[5] Without that right, it is entirely pointless to consider whether that plaintiff can also maintain suit against strangers who never harmed him, but only harmed the unnamed.

Watson has not presented, preserved, or briefed his attempt to obtain class certification. He therefore cannot maintain claims based on juridical linkage, and his only standing is to pursue claims against those who harmed him. Because Watson has not alleged—and cannot allege—that he suffered any injury that is traceable to the other defendant municipalities and private administrators, he has no standing with regard to these defendants. The trial court therefore did not err in granting their pleas to the jurisdiction.

---

no writ); *Tex. Educ. Agency v. Leeper*, 843 S.W.2d 41, 53–54 (Tex. App.—Fort Worth 1991), *aff'd in part, rev'd in part on other grounds*, 893 S.W.2d 432 (Tex. 1994).

In sum, the party seeking to apply the juridical link doctrine must still satisfy the tests for standing and class certification as part of the same exercise—considering standing first and then class certification—albeit with slight modifications to their elements of traceability and typicality.

[5]Until a class action is certified, a suit brought as a class action is treated as if it were brought by the named plaintiffs suing on their own behalf. *Dall. Fort Worth Int'l Airport Bd. v. Cox*, 261 S.W.3d 378, 384 (Tex. App.—Dallas 2008, no pet.); *Am. Online, Inc. v. Williams*, 958 S.W.2d 268, 273 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Palais Royal, Inc. v. Partida*, 916 S.W.2d 650, 653 (Tex. App.—Corpus Christi 1996, orig. proceeding).

**D.** **We do not Determine Whether Watson has Standing to Sue the State or Whether the Claims Discussed Above are Moot**

Also within his first issue, Watson argues he has standing to sue the State, and the trial court erred in concluding otherwise. Watson cites no authority that would inform our analysis of this question.

However, we need not determine whether Watson has standing to sue the State. While an analysis of standing would have bearing on the trial court's subject matter jurisdiction, as we explain, there are two other jurisdictional concerns—immunity from suit and exhaustion of administrative remedies—that bar his claims against the State in any event. Even assuming that Watson has standing to sue the State, then, a lack of jurisdiction stands in the way of Watson's claims against the State for other reasons. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S. Ct. 2295, 2307 (1999) (holding that courts need not address standing when other concerns are "logically antecedent" and equally dispositive). We therefore need not resolve this question today.

The recent repeal of the enabling statute would seem to provide yet another possible reason to decide against Watson on all of his claims: mootness. A case becomes moot when there ceases to be a justiciable controversy between the parties or when the parties cease to have a legally cognizable interest in the outcome. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (op. on reh'g). A case can become moot at any time, including on appeal. *Id.* When a case becomes moot, the court loses jurisdiction and cannot hear the case. *Id.* But a case is not rendered moot simply

17

because some of the issues become moot during the appellate process. *Id.* If only some claims or issues become moot, the case remains "live," at least as to other claims or issues that are not moot. *Id.*

But given our resolution of the standing inquiry, we need not consider whether the statute's repeal mooted Watson's prospective claims or his claims against any defendants in this appeal other than the State and Southlake; we have already determined that Watson may not bring those claims due to lack of standing. *See Tex. Dep't of Pub. Safety v. Salazar*, No. 03-11-00478-CV, 2013 WL 5878905, at *8 (Tex. App.—Austin Oct. 31, 2013, pet. denied) (mem. op.) ("Given our ultimate resolution that the district court never had jurisdiction over those claims, we need not address whether those claims were mooted by changes to the governing statutes and rules occurring after the district court issued its judgment.").

Rather, it is enough to say that Watson's retrospective claims against the State and Southlake are not moot. Even if the repeal had wholly "obviated" the "need to seek a declaration voiding" the statute, "the repeal did not remedy any harm" that might have been caused under the statute prior to its repeal. *City of Bedford v. Apartment Ass'n of Tarrant Cty., Inc.*, No. 02-16-00356-CV, 2017 WL 3429143, at *6 (Tex. App.—Fort Worth Aug. 10, 2017, pet. denied) (mem. op.). Put differently, the government "cannot extract millions in unlawful fees and fines, decide the whole thing was a mistake, keep the money, and insist the whole matter is moot." *Lowenberg v. City of Dall.*, 261 S.W.3d

18

54, 59 (Tex. 2008) (per curiam). "For those who paid, the controversy remains real."

*Id.* Thus, there remains an active controversy regarding Watson's retrospective claims.

## F.     Summary

Watson's standing does not extend (1) to any defendant besides the State and Southlake or (2) to his prospective claims against any defendant at all. Watson's claims against Redflex are not at issue in this appeal.[6] We therefore proceed to explain why other doctrines bar Watson's remaining retrospective claims against the State and Southlake.

## III.     IMMUNITY

We have already held that Watson has no standing to raise his prospective claims for injunctive and declaratory relief. We therefore need not consider what we deem to be Watson's second issue, in which he argues that his claims for injunctive and declaratory relief are not barred by immunity.

In his third issue, Watson argues that his claim for reimbursement of the civil fine he paid is not barred by immunity. He argues that this claim is not subject to immunity because the fine was (1) paid under duress and (2) assessed under an unconstitutional body of law, and thus the fine was (3) never the government's rightful property in the first instance.

---

[6]Watson has outstanding claims for DTPA violations and common law misrepresentation against Redflex. However, unlike Southlake, Redflex could not file an interlocutory appeal of these claims. Thus, we do not address them.

Watson correctly observes that there is an exception to immunity when an unconstitutionally assessed fine is paid under duress. However, following the controlling guidance of *Garcia*, we conclude that Watson did not pay his fine under duress, and he is not entitled to bring a claim under this exception.

Political subdivisions of the state, including cities, share in Texas's inherent sovereign immunity. *Garcia*, 2019 WL 1967140, at *4. Immunity from suit implicates a court's jurisdiction. *Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam).

Texas law recognizes a narrow exception to immunity when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress. *Garcia*, 2019 WL 1967140, at *5. "A common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Id.* This compulsion "must be actual and imminent, and not merely feigned or imagined." *Id.* "[D]uress is established where the unauthorized tax or fee is 'required,' 'necessary,' or 'shall' be paid to avoid the government's ability to charge penalties or halt a person from earning a livelihood or operating a business." *Id.* (quoting *Dall. Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 879 (Tex. 2005)). "Succinctly, the decision faced is to comply or close up." *Id.* (internal quotation marks omitted).

20

The court held that duress was not shown because Garcia had the option to pursue an administrative hearing to contest liability on the fine. *Id.* at *6 (citing former Tex. Transp. Code Ann. § 707.014(a)). Such a request would temporarily remove the immediate obligation to pay the fine, and it would potentially have allowed Garcia to avoid the fine altogether. *Id.* The court reasoned that because Garcia did not invoke this "automatic reprieve from payment," he could not claim that he paid his fine under duress. *Id.* "There is no compulsion—much less imminent compulsion—if payment may be delayed simply by contesting the underlying citation." *Id.*

Applying this reasoning here, we conclude that Watson did not pay his fine under duress. Watson admits that he did not avail himself of the opportunity to contest his fine in an administrative hearing. He therefore had, but discarded, the chance for an abeyance of the penalty. He cannot now claim that imminent compulsion forced his hand. *See id.*

Both Southlake and the State have immunity from this claim. *See id.* Watson's claim for reimbursement therefore fails as a matter of law. We overrule Watson's third issue.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. Exclusive Jurisdiction

After filtering Watson's claims for standing and immunity, the only remaining cause of action at issue in this appeal is Watson's claim for takings. In *Garcia*, the court

21

relied on exhaustion of administrative remedies to dispense with a similar takings claim. *See id.* at \*7.

However, within his fourth issue, Watson raises at least one exhaustion argument not considered by the *Garcia* court. He directs our attention to article V, section 19 of the Texas constitution, which provides that justice of the peace courts shall have "exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less." Tex. Const. art. V, § 19. Watson notes that there are no exceptions to this rule. He observes that the amount in controversy in any given red-light-camera case is a civil penalty of $75, plus a late fee of $25 if the penalty is not timely paid. Act of May 16, 2007, 80th Leg., R.S., ch. 1149, § 1, 2007 Tex. Gen. Laws 3924 (former Tex. Transp. Code Ann. § 707.007). He contends that jurisdiction to consider such a case therefore rests solely with the justice of the peace courts. Citing cases dating back to 1849, Watson contends that where the state constitution vests jurisdiction over a subject matter exclusively in a particular court, the Legislature cannot confer jurisdiction over that subject matter to any other tribunal. *See Johnson v. Happell*, 4 Tex. 96, 99 (1849). Watson contends that the Legislature therefore had no right to provide for administrative resolution of red-light-camera cases outside the exclusive jurisdiction of the justice of the peace courts. By extension, he reasons that his claims cannot be barred for failure to exhaust an administrative remedy that is void under the Texas constitution.

While Watson's argument is novel, this case presents no occasion to consider it, because Watson's claims far exceed the $200 threshold that demarcates a justice of the

22

peace court's exclusive jurisdiction. Watson's claims focused on $75 fines, but he purported to plead thousands of such fines on behalf of himself and all others similarly situated. For the amount in controversy, he referred to rule 47(c)(5), which governs suits in which a party seeks "monetary relief over $1,000,000." *See* Tex. R. Civ. P. 47(c)(5). He further pleaded that the government defendants had "fleeced the registered owners of vehicles like Watson and others similarly situated[] for a total sum well in excess of $128 million," not including the additional revenues collected by private administrators like Redflex. Thus, the figures discussed in his live petition give some indication of the handsome relief that Watson envisioned for himself and many other unnamed plaintiffs.

When multiple plaintiffs assert claims against a defendant, their claims are aggregated to determine the amount in controversy. *See* Tex. Gov't Code Ann. § 24.009; *Dubai Petro. Co. v. Kazi*, 12 S.W.3d 71, 75 n.4 (Tex. 2000) (op. on reh'g). In the jurisdictional context, the phrase "amount in controversy" means the sum of money or the value of the thing originally sued for. *In re City of Dall.*, 501 S.W.3d 71, 73 n.1 (Tex. 2016) (orig. proceeding) (per curiam). Usually, the amount in controversy is determined by the amount the plaintiff seeks to recover, not merely what the plaintiff is likely to recover. *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 402 (Tex. 2007).

By aggregating the claims of purported class members, Watson pleaded an amount in controversy over $1,000,000. Thus, the amount in controversy far exceeds the $10,000 ceiling for what a justice of the peace court *may* consider, *see* Tex. Gov't

23

Code Ann. § 27.031(a)(1); Tex. R. Civ. P. 500.3(a)–(d), let alone the $200 threshold for what such a court must consider under its exclusive jurisdiction. *See* Tex. Const. art. V, § 19. We therefore need not address Watson's argument concerning exclusive jurisdiction in order to resolve this appeal. Any attempt to do so would be purely advisory and would thus fall outside our jurisdiction under the state constitution. *See Harper*, 562 S.W.3d at 6. We overrule Watson's fourth issue without expressing any opinion concerning this argument.[7]

## B.    Failure to Exhaust Administrative Remedies

We next discuss Watson's retrospective claim for unconstitutional takings against Southlake and the State, which unlike his reimbursement claim is not barred by immunity. *See Garcia*, 2019 WL 1967140, at *6. In his fifth issue, Watson says his funds have been unlawfully taken for public use pursuant to an unconstitutional statute, and he is therefore entitled to the reasonable value of the taken property—i.e., the amount of the fine itself. *See* Tex. Const. art. I, § 17(a) ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."). Watson's argument is that an administrative officer would have had

---

[7]We also decline to express any opinion concerning the Dallas Court of Appeals's recent holding on this argument. *See City of Richardson v. Bowman*, 555 S.W.3d 670, 683–84 (Tex. App.—Dallas 2018, pet. denied).

no authority to resolve his takings claim, and Watson should therefore not be required to exhaust a meaningless administrative "remedy" before proceeding to court.

In *Garcia*, the Texas Supreme Court dealt with a similar takings claim and a nearly identical argument against exhaustion of administrative remedies. *See Garcia*, 2019 WL 1967140, at *7. Garcia argued that the hearing officer had no authority to resolve his takings claim, and he was therefore not required to pursue administrative remedies before bringing that claim in court. *Id.* at *1. The *Garcia* court disagreed, reasoning that it was immaterial whether the hearing officer could resolve all of his claims, so long as the hearing officer could render relief that would have mooted those claims. *Id.* at *7. "The question here is not whether an administrative hearing could have resolved all of his claims, constitutional or otherwise." *Id.* "Rather, the correct inquiry is whether the hearing officer had the authority to render Garcia's claims moot." *Id.* "Simply put, the administrative proceeding could have obviated the need for Garcia's takings claim in district court because it had the potential to moot that claim." *Id.* For that reason, the court held that Garcia was nonetheless required to pursue administrative remedies, regardless of the nature of his claims. *Id.*

We follow this reasoning here. Pursuit of administrative remedies might have yielded a determination that Watson was not liable for a civil fine at all. He was therefore required to exhaust his administrative remedies, which might have mooted his takings claim against the State and Southlake. *See id.* The trial court therefore did

not err in granting a plea to the jurisdiction as to the State and Southlake. We overrule Watson's fifth issue.

## V.     SEVERANCE

In his sixth issue, Watson contends that the trial court erred by severing his claims against all defendants other than Southlake and Redflex. Watson contends that his claims against all defendants were integrally linked, such that the suits could not be maintained separately. As support, he cites the rule that severance is proper only if (1) the controversy involves multiple causes of action, (2) the severed claim would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *In re State*, 355 S.W.3d 611, 614 (Tex. 2011) (orig. proceeding).

But the trial court did not sever these actions so that they could be maintained separately. Instead, the trial court severed these actions so that they could be finalized and appealed separately.[8] Regardless of whether the claims could be maintained separately, "a trial court may sever dismissed claims from remaining claims in order to

---

[8]In the same vein, Watson cites *Combs v. Chevron, Inc.*, 319 S.W.3d 836, 845 (Tex. App.—Austin 2010, pet. denied) (op. on reh'g), which according to Watson stands for the proposition that "where the trial court dismisses some causes of action based upon a plea to the jurisdiction, the court cannot sever those claims from remaining claims since it does not have jurisdiction over the causes." Watson misreads that case, which instead stands for the proposition that a trial court may not sever and separately maintain jurisdiction over a matter as to which a plea to the jurisdiction should have been granted. *See id.*

render an otherwise interlocutory judgment final and appealable." *Aviation Composite Techs., Inc. v. CLB Corp.*, 131 S.W.3d 181, 187 n.5 (Tex. App.—Fort Worth 2004, no pet.); *see Brown v. Todd*, 53 S.W.3d 297, 300 (Tex. 2001) ("After the trial court dismissed Hotze's claim for lack of standing, he could have sought a severance so that the dismissal against him would have been an appealable final judgment. In that event, both the court of appeals and this Court would unquestionably have had jurisdiction over his claim."). Indeed, it is common practice to grant a plea to the jurisdiction as to certain claims and then sever those claims for purposes of finalization. *See, e.g., Martinez v. Val Verde Cty. Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex. 2004) (reciting, as uncontroversial background, the fact that the trial court sustained a plea to the jurisdiction and severed related claims, thereby finalizing judgment as to those claims); *Campos v. Tex. Dep't of Criminal Justice*, 385 S.W.3d 35, 39 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) (mem. op.) (same); *Joyner v. DeFriend*, 255 S.W.3d 281, 282 (Tex. App.—Waco 2008, no pet.) (same).

Courts permit severance principally to avoid prejudice, do justice, and increase convenience. *State*, 355 S.W.3d at 613. A trial court has broad discretion in determining whether severance should be granted. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g); *In re Estate of Preston*, 346 S.W.3d 137, 168 (Tex. App.—Fort Worth 2011, no pet.). Based on these considerations, multiple courts have rejected the very argument that Watson raises here. *See Dayne v. Tex. Dep't of Family & Protective Servs.*, No. 13-10-00679-CV, 2011 WL 4998872, at *9 (Tex. App.—

27

Corpus Christi–Edinburg Oct. 20, 2011, pet. denied) (mem. op.); *Noell v. Air Park Homeowners Ass'n, Inc.*, 246 S.W.3d 827, 837 (Tex. App.—Dallas 2008, pet. denied).

The trial court could have rationally determined that it would serve the interest of convenience to finalize its orders regarding all defendants except Southlake and Redflex. *See State*, 355 S.W.3d at 613. We therefore conclude that the trial court did not abuse its broad discretion by ordering severance. *See Noell*, 246 S.W.3d at 837. We overrule Watson's sixth and final issue.

## VI.   CONCLUSION

For want of standing, Watson's prospective claims fail, as do his retrospective claims against all defendants in this appeal except the State and Southlake. For reasons of immunity, Watson's claim for reimbursement against the State and Southlake also fails. Finally, for failure to exhaust administrative remedies, Watson's claim for takings—his last remaining claim against the State and Southlake—fails as well. Each of these failures is jurisdictional. *See Meyers*, 548 S.W.3d at 484 (standing); *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) (exhaustion); *Juarez*, 420 S.W.3d at 41 (immunity). The trial court therefore did not err in granting pleas to the jurisdiction as to these parties.[9]

---

[9]Watson has not argued that the dismissal in appellate cause number 02-18-00151-CV should have been without prejudice. A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error. *Davis v. Mueller*, 528 S.W.3d 97, 103 n.38 (Tex. 2017). We therefore do not consider whether the dismissal should have been without prejudice.

28

In appellate cause number 02-18-00151-CV, we affirm the trial court's judgment dismissing Watson's claims against all defendants besides Southlake and Redflex. In appellate cause number 02-18-00143-CV, we affirm the trial court's order granting Southlake's plea to the jurisdiction. Watson's sole remaining claims are against Redflex.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: September 19, 2019

---

Also, certain municipalities have filed motions seeking to be dismissed from this appeal. Because we hold that Watson lacked jurisdiction to sue any government defendant involved in this appeal, we deny these motions as moot.